STATE OF NORTH CAROLINA v. ELWOOD SMITH

No. 19

(Filed 5 March 1980)

Criminal Law §§ 124.1, 126.2— insufficient written verdict—acceptance of verdict after inquiry and polling of jury

    Although written issues submitted to the jury as to whether defendant was "guilty or not guilty" of assault with a deadly weapon with intent to kill and first degree murder were answered "yes" by the jury rather than "guilty," the trial court did not err in accepting the jury's verdicts as verdicts of guilty where the court inquired as to whether the jury had found defendant guilty or not guilty of first degree murder and the foreman answered "guilty"; the court asked the jury if that was the verdict of all of the members of the jury and they replied "yes"; the same procedure was followed with respect to the assault charge; the jury was polled and each juror individually answered that his verdict was that defendant was guilty of first degree murder, that his verdict was that defendant was guilty of assault with a deadly weapon with intent to kill, and that he still assented to each of those verdicts; and after the twelfth juror was polled, the entire jury together answered "yes" when asked if they all agreed that it was their verdict that defendant was guilty of first degree murder and when asked if it was their verdict that defendant was guilty of assault with a deadly weapon with intent to kill. G.S. 15A-1237.

ON appeal by defendant from *Friday, J.* at the 21 May 1979 Schedule "D" Criminal Session of MECKLENBURG County Superior Court.

Defendant was charged in indictments, proper in form, with the first degree murder of Gary Lee Stratton and with assault with a deadly weapon with the intent to kill Deborah Lynn Sloan.

The State's evidence tended to show that Terry Charlene Jewett lived with Stratton for approximately two and one-half years and had a child by him in March of 1976. In late 1977, she met, dated and began living with the defendant.

On 29 October 1978 the defendant had a .22 caliber Winchester semi-automatic rifle in Jewett's apartment and he shot at her. On 30 October 1978 Officer D. L. Beveridge of the Charlotte Police Department took this rifle from Jewett's apartment, which defendant stated belonged to him, and turned it over to defendant's wife. Defendant was found not guilty of assault in connection with this incident.

Jewett stopped living with the defendant at the end of October, 1978. On 10 November 1978 she was with Stratton and they had been "back together" for over a week. At approximately 7:30 p.m. on that date, they went to the Fonz Club in Charlotte. Shortly before 10 p.m. they were talking with friends in the parking lot of the club when Jewett heard a sound "like a firecracker." She looked at her right and "saw Elwood Smith there with a long-handled gun." Defendant fired several shots in the direction of Jewett and her friends. Stratton and Sloan were both wounded. Stratton died of a gunshot wound to his left chest. Sloan testified that she was hospitalized for ten days with a gunshot wound to her right top arm and a gunshot wound to her stomach.

Ten shell casings were recovered at the parking lot of the Fonz Club and on 17 November 1978 Jewett gave Officer Hagler of the Charlotte Police Department a shell casing she had found in her apartment when the defendant shot at her on 29 October 1978. Crime laboratory personnel with the Charlotte Police Department tested the shell casings and testified that the markings on all the shell casings were consistent with being fired from the same firearm and consistent with a Winchester semi-automatic rifle. All of the shells were .22 caliber.

Kimberly Kennedy testified that the defendant picked her up at approximately 7:30 p.m. on 10 November 1978. They went to a restaurant and then around 10 p.m. they went to a bar and pool

hall. She left that establishment alone around 10:05 p.m. At that time, defendant was still there and he was shooting a game of pool.

Defendant was found guilty as charged of both offenses. The State submitted no aggravating circumstances and therefore the jury recommended life imprisonment for the first degree murder conviction. Pursuant to G.S. 15A-2002, the trial judge imposed a life sentence for that conviction and defendant has appealed this conviction to this Court. Defendant was sentenced to a term of imprisonment of ten to twenty years upon his conviction for assault with a deadly weapon with intent to kill. Defendant's motion to bypass the Court of Appeals on his appeal from this conviction was allowed by this Court on 26 November 1979.

*Keith M. Stroud for the defendant.*

*Attorney General Rufus L. Edmisten by Special Deputy Attorney General Thomas F. Moffitt for the State.*

COPELAND, Justice.

Defendant presents one assignment of error. He contends that the trial judge erred in accepting the jury's written verdict because it was improper in form. On the written verdict form, which is required by G.S. 15A-1237, the relevant issues which were submitted are:

> "Is the defendant, Elwood Smith, guilty or not guilty of assault with a deadly weapon with intent to kill, thereby inflicting serious bodily injury?"

> "Is the defendant, Elwood Smith, guilty or not guilty of the unlawful killing of Gary Stratton with malice and with premeditation and deliberation; i.e., first degree murder?"

The jury answered these two issues "yes" rather than "guilty." Defendant argues that he is unable to determine whether the jury found him guilty of the two offenses for which he has been convicted and sentenced.

We hold that the trial judge did not err in accepting the jury's verdicts. The requirement under our case law is that if the verdict substantially answers the issue(s) so as to permit the trial judge to pass judgment in accordance with the manifest intention

of the jury, then the verdict should be received and recorded. *State v. Hampton*, 294 N.C. 242, 239 S.E. 2d 835 (1978). The manifest intention of the jury is absolutely and unequivocally clear in this case from the written verdict form and from the further recorded proceedings had during and after the return of the verdicts. The statutory requirement of a written jury verdict was intended to cure defects that would occur in the verdict if the jury foreman inadvertently omitted some essential element of a verdict in stating it orally. Official Commentary, G.S. 15A-1237. That statute does not bar inquiry from the court or a polling of the jury to insure that the written verdict is sufficiently clear and free from doubt. Indeed, G.S. 15A-1237(a) requires that the verdict be returned in open court and G.S. 15A-1238 requires that the jury be polled if a motion for polling is made by any party after the return of the verdict.

When the jury returned to the courtroom with its verdicts, the court inquired as to whether it had found the defendant guilty or not guilty of first degree murder and the foreman answered "guilty." The trial judge asked the jury if that was the verdict of all of the members of the jury and they replied "yes." The procedure was the same with respect to the assault charge. Furthermore, the defendant moved to have the jury polled. Each juror individually answered "yes" when asked by the Clerk of Court if it was his verdict that defendant was guilty of first degree murder, "yes" when asked if that was still his verdict, "yes" when asked if it was his verdict that defendant was guilty of assault with a deadly weapon with the intent to kill, and "yes" when asked if that was still his verdict. After the twelfth juror was polled, the entire jury stood and together answered "yes" when asked if they all agreed that it was their verdict that defendant was guilty of first degree murder and together they answered "yes" when asked if it was their verdict that defendant was guilty of assault with a deadly weapon with intent to kill.

Whatever uncertainty there may have been in the written verdicts of the jury, it was surely removed upon the trial judge's receipt of the verdicts from the jury foreman and upon the polling of the jury by the Clerk of Court. No doubtful or insufficient verdicts were received in this case. *See, Davis v. Smith*, 273 N.C. 533, 160 S.E. 2d 697 (1968). The trial judge properly received the

verdicts, entered the judgments and sentenced defendant in accordance with those verdicts.

Due to the seriousness of the charges and the severity of the sentences imposed, we have examined the entire record and we find that the defendant has received a fair trial free from prejudicial error.

No error.