STATE OF NORTH CAROLINA v. BILLY RAY COLLINS

No. 8026SC668

(Filed 16 December 1980)

**1. Criminal Law § 162— objection to evidence — similar evidence admitted without objection**

Where defendant objected to evidence which had previously been admitted or was subsequently admitted without objection, defendant lost the benefit of his objection.

**2. Robbery § 4.2— defendant as perpetrator of common law robbery — sufficiency of evidence**

In a prosecution for common law robbery, evidence that defendant was the perpetrator of the crime charged was sufficient to be submitted to the jury where it tended to show that defendant had been in the victim's home earlier in the day of the incident; the victim's stepson was returning to the victim's home a short time afterwards when he found the front door locked, which he termed an "unusual" occurrence; after he knocked he heard the victim yell and then heard the back door slam; upon running to the rear of the house, the stepson saw defendant running away from the house with what appeared to be a rifle in his hand; a neighbor saw defendant inside the screen door of the victim's back entrance; and a rifle belonging to the victim was thereafter found at the home of defendant's cousin, where defendant himself was found by the victim's stepsons shortly following the incident.

**3. Criminal Law § 124.1— verdict not signed by foreman — validity**

There was no merit to defendant's contention that the verdict against him was invalid because the jury foreman did not sign it as required by G.S. 15A-1237(a),

since the verdict substantially answered the issue so as to permit the trial judge to pass judgment in accordance with the manifest intention of the jury.

APPEAL by defendant from *Ferrell, Judge.* Judgment entered 7 February 1980 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 13 November 1980.

Defendant was charged under proper indictment with the common law robbery of Isiah Alspugh of $2.50 in United States currency. Upon defendant's plea of not guilty, the State presented evidence tending to show the following:

On 20 October 1979, Isiah Alspugh, seventy-five years old, was at home alone sitting in a chair in the front room, when someone opened the front door and entered the house. The door was not locked because his sons "were out of the house and they 'come in and out,' and I hate to go to the door so often." The man who entered hit Alspugh and asked if he had any money. Alspugh said "no," and the man reached in and "tore the pocket off of my left pants pocket to get my pocketbook out and took the money which was about two dollars and some change; afterward, my wallet was lying on the floor." Alspugh could not remember how many times he was hit or what the man did after Alspugh was hit, as Alspugh was "knocked unconscious." Alspugh did not see the person who hit him, nor what the person used to hit him. Alspugh did not "come to" until about ten or fifteen minutes later, just before he was found by his stepson, Keith Ashford. Alspugh's face was swollen as a result of the incident, and Alspugh had not given anyone permission to take his money. Alspugh and his wife had a rifle in a locked bag in an upstairs closet, but he could not recall hearing anything upstairs after he was hit.

Alspugh's stepson, Keith Ashford, had been at the home of defendant's cousin, Gary Lee, shortly before 2:00 p.m. on 20 October 1979. Ashford had met defendant previously. Ashford, Lee, and defendant left Lee's home to pick up Lee's girlfriend and take her home. The three men then stopped by the Alspugh home for between five and fifteen minutes. Alspugh was on the front porch during this time. When the three men left, defendant said he was going to see a girlfriend; Ashford and Lee went to Lee's home for about fifteen minutes, and Ashford then returned to the Alspugh home. When Ashford got to the front door, the door was locked, which Ashford found "unusual." Ashford knocked, and he heard Alspugh yell. Then Ashford heard the back door slam, and he ran to the rear of the house and saw defendant running across a field in back of the house with

"what looked like a rifle in his hands." A neighbor, Ruth Little, had seen defendant inside the screen door at the rear of the Alspugh home before this time, and she witnessed defendant's running out the back door and across the field.

After finding his stepfather, Ashford got his oldest brother, Nathaniel Ashford, and returned to the Lee home in search of the rifle. Defendant's girlfriend let them in the back door, and when they got inside, they noticed defendant "rattling" the front door. Defendant had a rifle, and he turned and started firing at the brothers. The Ashfords fled, with Nathaniel returning defendant's fire with a pistol.

When the police arrived shortly thereafter, the Ashford brothers returned to the Lee residence, where a rifle was found upstairs partially under a bed. Keith Ashford identified the rifle as belonging to the Alspughs. The rifle had "blood on it," and Keith Ashford observed that "[n]either I nor my brother was bleeding, but [defendant] was."

Defendant offered no evidence.

The jury found defendant guilty as charged, and from a judgment imposing a prison sentence of "not less than ten (10) years nor more than ten (10) years," defendant appealed.

*Attorney General Edmisten, by Special Deputy Attorney General Thomas F. Moffitt, for the State.*

*Assistant Public Defenders Cherie Cox and Ronald L. Chapman, for the defendant appellant.*

HEDRICK, Judge.

[1] Based on his second assignment of error, defendant contends the court erred in allowing the witness Keith Ashford, when questioned whether he asked the neighbor, Ruth Little, if she saw what happened, to testify as to what Little said and to what his stepfather said. Defendant argues that this testimony was both hearsay and non-responsive, and should have been stricken. We do not agree. Ashford first testified that Little said, "I just seen that boy run out of here that was with you." Essentiall the same testimony, however, was introduced into evidence without objection when Ruth Little gave testimony as a witness later in the trial. Ashford then testified that his stepfather said, "He took my money and hit me like that." Not only could this testimony be admissible under one of several exceptions to the hearsay rule, *e.g.* excited utterance, but this testimony also merely

corroborated the testimony already given by the stepfather. Since the challenged evidence had either theretofore or thereafter been admitted without objection, defendant lost any opportunity he might have had to object. *State v. Campbell,* 296 N.C. 394, 250 S.E.2d 228 (1979); *State v. Hill,* 294 N.C. 320, 240 S.E.2d 794 (1978). Although defendant also contends this testimony was non-responsive, we think the trial judge in his discretion properly denied defendant's motion to strike, since the testimony helped set forth the events and circumstances surrounding the incident at issue. This assignment of error has no merit.

[2] Defendant's fourth assignment of error relates to the court's denial of defendant's motion to dismiss at the close of the evidence. Although defendant acknowledges that the evidence was sufficient to reach the jury on the question of whether the offense of common law robbery was committed, he contends that "there was not enough evidence, direct or circumstantial, to go to the jury on which they could find beyond a reasonable doubt that the defendant was the perpetrator of the crime of common law robbery." We disagree. On a motion to dismiss for insufficient evidence, the court must find that there is substantial evidence, whether direct, circumstantial, or both, that the offense charged has been committed and that defendant committed it, in order to properly deny the motion. *State v. Scott,* 296 N.C. 519, 251 S.E.2d 414 (1979); *State v. Love,* 296 N.C. 194, 250 S.E.2d 220 (1978). If, on the other hand, the evidence raises merely a suspicion or conjecture as to either the commission of the offense or defendant's identity as the perpetrator, the motion should be allowed *State v. Powell,* 299 N.C. 95, 261 S.E.2d 114 (1980); *State v. Irick,* 291 N.C. 480, 231 S.E.2d 833 (1977). The evidence must be considered in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn therefrom. *State v. Hardy,* 299 N.C. 445, 263 S.E.2d 711 (1980); *State v. Irick, supra.*

In the present case, the evidence tends to show that defendant had been in the Alspugh home earlier on the day of the incident; that Keith Ashford was returning to the Alspugh home a short time afterwards when he found the front door locked, which he termed an "unusual" occurrence; that after he knocked, he heard Alspugh yell, and then he heard the back door slam; and that upon running to the rear of the house, Ashford saw defendant running away from the house with "what appeared to be a rifle in his right hand." The

State v. Collins

evidence also tends to show that a neighbor, Ruth Little, was carrying a load of clothes to a clothesline in clear view of the back door of the Alspugh home, when the following occurred:

> I saw the defendant inside the Alspugh's screen door and the other door was open. He had been wearing a white shirt and black pants earlier. At that time, all he had was a little metal piece in his hand. He stood there smiling. I went inside and came back outside and hung some clothes while he just stood there. The screen door seemed to be "dragging" and suddenly, it flew open and he ran onto the back porch .... He ran down the hill. By that time, Keith came and asked if anyone came out of the apartment and I said "yes."

The evidence further tends to show that a rifle belonging to the Alspughs was thereafter found at the home of defendant's cousin, where defendant himself was found by the Ashford brothers shortly following the incident. In our view, the evidence not only strongly suggests that defendant was in the Alspugh home at the time of the incident in question, but it also raises the reasonable inference that defendant had to be the person who robbed Isiah Alspugh, and thus the trial judge properly denied defendant's motion to dismiss. This assignment of error has no merit.

[3] Based upon his fifth assignment of error, defendant contends that the verdict against defendant in this case was invalid because the jury foreman did not sign the verdict as required by G.S. § 15A-1237(a), which provides as follows: "The verdict must be in writing, signed by the foreman, and made a part of the record of the case." We do not agree. The Official Commentary to G.S. § 15A-1237 indicates that the section was intended to eliminate any ambiguity or confusion that might result from the giving of an oral verdict:

> It is contemplated that the jury will be given a verdict form setting out the permissible verdicts recited by the judge in his instructions. This procedure should cure a great many defects that occur when the foreman of the jury inadvertently omits some essential element of a verdict in stating it orally.

*See State v. Smith,* 299 N.C. 533, 263 S.E.2d 563 (1980); *State v. Good-*

*man,* 298 N.C. 1, 257 S.E.2d 569 (1979). In the present case, no such omission was possible, since the written verdict form properly set forth, without any possibility of ambiguity or confusion, the essential elements of the verdicts that could be returned. Furthermore, if, as in this case, the verdict substantially answers the issue so as to permit the trial judge to pass judgment in accordance with the manifest intention of the jury, then the verdict should be received and recorded. *State v. Smith, supra.* This assignment of error is meritless.

Defendant's remaining assignment of error argued on appeal relates to the denial of defendant's motions to set aside the verdict and for a new trial. These motions were in turn based on the court's denial of defendant's motion to dismiss discussed heretofore. Obviously, this assignment of error merits no further discussion.

We hold defendant had a fair trial free from prejudicial error.

No error.

Judges CLARK and WHICHARD concur.