STATE OF NORTH CAROLINA v. WILLIAM FRANKLIN THOMPSON

No. 7527SC206

(Filed 4 June 1975)

**1. Homicide § 21— second degree murder — sufficiency of evidence**

The State's evidence was sufficient for the jury in a prosecution for second degree murder of defendant's wife where it tended to show that defendant and his wife were having marital difficulties; defendant bought a pistol, defendant stated he was going to kill his wife, a witness heard a commotion in defendant's house followed by a gunshot, after which defendant came to the door and stated his wife had been shot, defendant told a hospital technician and a detective that he had shot his wife, and the victim's death was caused by a gunshot wound in her head.

**2. Homicide § 17— evidence of threats**

The time of defendant's threat to kill his wife was sufficiently established to permit the admission of evidence of the threat where the

evidence showed defendant's wife was killed on Saturday, 15 June 1974, and a witness testified defendant made the threat about the middle of June on a Thursday night.

**3. Criminal Law § 162— failure to object to evidence**

An objection to the admission of evidence is necessary to present a contention that the evidence was incompetent.

APPEAL by defendant from *Hasty, Judge.* Judgment entered 24 October 1974 in Superior Court, CLEVELAND County. Heard in the Court of Appeals 15 May 1975.

Defendant was indicted for the first-degree murder of his wife, Mary Diane Thompson (Diane). When the case came on for trial, the district attorney announced that the State had elected to try defendant for second-degree murder. He pled not guilty. The jury returned a verdict of guilty of second-degree murder and from judgment imposing prison sentence of not less than 20 nor more than 25 years, defendant appealed.

*Attorney General Edmisten, by Assistant Attorney General Charles R. Hassell, Jr., for the State.*

*Bell & Lang, by Thomas R. Bell, Jr., for the defendant appellant.*

BRITT, Judge.

[1] Defendant assigns as error the failure of the court to allow his motion to dismiss interposed at the close of all the evidence. When considered in the light most favorable to the State, as we are required to do, the evidence presented by the State and defendant tended to show:

Diane's death occurred on Saturday afternoon, 15 June 1974. For some period of time prior thereto, she and defendant were having marital difficulties. When defendant went home on Wednesday night (June 12), Diane was not there. The next day he purchased a .32 cal. H & R revolver from George Cherry for $70 and that night went looking for Diane. Among other places, he went to the home of Pamela Hickman, Diane's cousin, and when Pamela told defendant she had not seen Diane, defendant said "he was going to have to get prepared for a funeral because . . . he was going to kill Diane." Defendant then went to the home of Diane's parents where he found her and succeeded in getting her to return home.

On Friday defendant was fired from his job. On Saturday morning he slept late while Diane went to her work at P. P. & G. Company. Around 10:00 a.m. defendant's friend, Ernest Chapman, went to defendant's home and woke him up. They proceeded to drink several beers after which Chapman carried defendant to a hardware store where defendant purchased a box of .32 bullets. Around 3:20 that afternoon, Chapman carried defendant to Diane's place of employment to pick her up but she rode home with some other people. Chapman then carried defendant to his home where defendant went inside, leaving Chapman outside. A little later, Chapman heard a commotion in the house, followed by a gunshot, after which defendant ran to the door and said, "My wife has been shot."

Chapman carried defendant and Diane to the Cleveland Memorial Hospital. Upon arrival at the hospital, defendant went to the emergency room and told Grace Sain, a hospital technician, that he had shot his wife and wanted help for her. While Diane was being taken into the emergency room, Mrs. Sain called a doctor and the Shelby Police Department. Detective Boyes of the Shelby P. D. arrived at the hospital at 4:49 p.m. and, as he entered the door, defendant went up to him and said: "Take me, I shot her. Go ahead and lock me up." Boyes then took defendant to an adjoining room and advised him of his rights. On cross-examination Boyes testified that defendant told him that he and his wife were fighting and the gun went off. On redirect examination, without objection, Boyes testified that defendant stated that people had told him his wife was "running around on him," that they had fought the day before, that they had fought that day (Saturday) when she got off from work, and that they were in the bedroom when he shot her with a .32 H & R. While at the hospital, defendant gave police permission to go to his home and get the gun.

Dr. McMurry arrived at the emergency room at 5:05 p.m. and, upon examination of Diane, determined that she was dead. He found a small round opening just under her nose but no exit opening. He opined that Diane died as the result of a gunshot wound of her head.

Later that afternoon or evening, police went to defendant's home and found a .32 cal. H & R revolver lying on a bedroom floor. The gun was fully loaded, with one bullet having been fired. Without objection, the pistol and bullets were admitted into evidence.

As a witness for himself, defendant testified that he purchased the gun on Thursday (before the killing on Saturday) ; that he bought it for his wife's protection. That he was showing the gun to her on Saturday when a struggle took place and the gun went off; that he had no intention of shooting her. Defendant also presented evidence as to his character.

We hold that the evidence was sufficient to survive the motion to dismiss and the assignment of error is overruled.

[2]  By his second assignment of error defendant contends the court erred in admitting into evidence prior threats made by defendant when the time of such threats had not been established. This assignment is without merit. The evidence tends to show that the killing occurred on Saturday, 15 June 1974. The witness Pamela Hickman testified that she saw defendant about the middle of June on a Thursday night at which time defendant stated to her ". . . that he was going to have to get prepared for a funeral because he said that he was going to kill Diane." The evidence considered as a whole tends to show that the witness was referring to the Thursday before the killing. The evidence was competent to show defendant's state of mind. 4 Strong, N. C. Index 2d, Homicide, § 17 (1968).

By his third assignment of error, defendant contends the court erred in admitting into evidence the results of a search of defendant's home, arguing that the search was illegal. We find no merit in the assignment.

[3]  The evidence which defendant challenges by this assignment is the pistol which police recovered and a photograph taken of the room where the pistol was found. We find it unnecessary to pass upon the question of whether the police, because of permission given by defendant, were justified in entering defendant's home. Page 38 of the record reveals that while an exception is noted to the action of the court in admitting photographs (including the challenged photograph) and the instruction that they were being admitted to illustrate testimony, no objection appears. Page 40 of the record reveals that State's exhibits 6 (pistol bullets) and 1 (pistol) were offered and admitted into evidence but no objection appears. An objection to the admission of evidence is necessary to present a contention that the evidence was incompetent. *State v. Camp,* 266 N.C. 626, 146 S.E. 2d 643 (1966). The assignment of error is overruled.

Rentals, Inc. v. Rentals, Inc.

We have considered the other assignments of error argued in defendant's brief but find them likewise to be without merit and they are overruled.

We conclude that defendant received a fair trial, free from prejudicial error.

No error.

Judges CLARK and ARNOLD concur.