STATE OF NORTH CAROLINA v. JAMES CURTIS VONCANNON

No. 8020SC539

(Filed 2 December 1980)

**1. Larceny § 7.4— larceny of tractor — possession of recently stolen property**

The State's evidence was sufficient to be submitted to the jury on the issue of defendant's guilt of felonious larceny of a tractor under the doctrine of possession of recently stolen property where it tended to show that defendant went to the home of his sister and her husband, told the husband that a man was having trouble with a tractor the man had purchased for resale, and asked if the man could park the tractor at the home of the sister and her husband overnight; the husband gave his permission; defendant left the home and the tractor was subsequently parked at the home; neither defendant's sister nor her husband saw defendant drive the tractor or saw the man referred to by defendant, although defendant's sister did see defendant leave in his truck; and the tractor parked at the home of defendant's sister and her husband at 10:30 p.m. on 5 June had been stolen during the afternoon of 3 June.

**2. Constitutional Law § 30— motion at trial to examine witness's written statements — absence of in camera examination — due process**

Defendant's due process rights were violated when the trial court denied defense counsel's motion, made at trial prior to cross-examination of a material State's witness, that counsel be allowed to examine any statements by the witness which had been reduced to writing, and failed to make an *in camera* inspection of the writing.

Judge HEDRICK dissenting.

APPEAL by defendant from *Mills, Judge.* Judgment entered 8 January 1980 in Superior Court, STANLY County. Heard in the Court of Appeals 15 October 1980.

Defendant was indicted and tried for the felonious larceny of an International tractor, the personal property of Kinlaw International. Defendant was found guilty and now appeals his conviction.

*Attorney General Edmisten, by Special Deputy Attorney General John R. B. Matthis and Assistant Attorney General Acie L. Ward, for the State.*

*Joe D. Floyd for defendant appellant.*

HILL, Judge.

[1]   Defendant has brought forth thirteen assignments of error. In reviewing defendant's conviction, we must first address defend-

ant's argument that the trial court erred when it denied defendant's motions to dismiss the case. We find there was sufficient evidence of felonious larceny for the case to be submitted to the jury and that defendant's motions to dismiss as of nonsuit were correctly denied.

The evidence taken in the light most favorable to the State tends to show that defendant went to the home of his sister and her husband on 5 June 1979 at approximately 10:30 p.m. Defendant asked his sister if he could speak with her husband, John York Jr. Defendant then went into the living room where York was watching television, told him that a man was having trouble with a tractor the man had purchased for resale and asked if the man could park the tractor at York's home overnight. York gave his permission; and in response to defendant's further question, stated that his landlord would not care if the tractor was parked at York's home overnight.

Defendant left the house. Subsequently, the tractor was driven in. Neither defendant's sister nor her husband saw defendant drive the tractor or saw the man defendant referred to, although defendant's sister did see defendant leave in his Toyota truck. The State's evidence further shows that a tractor was stolen from the premises of Kinlaw International sometime after Sunday afternoon, 3 June, and that the tractor parked at the York home on 5 June was the same tractor that was stolen from Kinlaw.

The State relies, in this case upon the doctrine of recent possession. The doctrine is well established and provides that a "defendant's possession of stolen goods soon after the theft is a circumstance tending to show the defendant is guilty of the larceny." *State v. Eppley*, 282 N.C. 249, 253, 192 S.E. 2d 441 (1972).

The doctrine does not apply automatically, however. "It applies only when the possession is of a kind which manifests that the stolen goods came to the possessor by his own act or with his undoubted concurrence." *State v. Foster*, 268 N.C. 480, 486, 151 S.E. 2d 62 (1966). Furthermore, the inference of guilt is one of fact, not of law. *State v. Ford*, 175 N.C. 797, 801, 95 S.E. 154 (1918).

We find a three part analysis to be helpful in reaching our conclusion that the judge did not err in submitting the case to the jury. The threshold issue is whether defendant ever possessed the tractor. We find that he did.

Defendant was in such physical proximity to the tractor that

State v. Voncannon

he had the power to control it to the exclusion of others and had the intent to control the tractor. *See Eppley, supra,* at p. 254. Although the evidence does not show who drove the tractor up to the York house, defendant testified that he told the stranger where to park the tractor close to the barn. Taken in the light most favorable to the State, the evidence shows that defendant meant for the tractor to be parked at the York home and was physically close enough to the tractor to direct its placement.

Before we can *infer* that the possessor, defendant, *wrongfully* took the tractor, we must answer a second question. Does the possession show a taking or privity in taking on the part of the possessor? *State v. Smith,* 24 N.C. 402, 408. *Also see Foster, supra,* at p. 486. Stated differently, does the fact that defendant was in possession, late in the evening, of a recently stolen tractor manifest that the tractor came into his possession by his own act or with his undoubted concurrence? *Ford, supra,* at p. 800. We believe so.

It is important to realize at this step in our analysis that we are not asking whether defendant's possession conclusively points to a guilty taking. Rather, we are asking if the tractor came into defendant's possession by his own action or by the action of one under his direction.

*Smith, supra,* is illustrative of this step in the analysis. In *Smith,* p. 408, tobacco had been stolen from a warehouse and placed in defendant's warehouse. The Court held that before the doctrine of recent possession could be applied and the inference made that defendant had participated in the theft, it would have to be shown that the tobacco could not have been placed in defendant's warehouse "without his *agency* or privity." In the instant case, it is clear from the evidence that defendant came into possession of the tractor by his own action.

The third step in our analysis is the inference itself. When it is shown that defendant came into possession of recently stolen property, through his own action, the jury may *infer* a guilty taking. The trial court's denial of defendant's motion to dismiss was proper.

[2] We have carefully examined each of defendant's remaining assignments of error and find one to be meritorious. Defendant correctly argues that the trial court violated his due process rights when it denied his counsel's motion, made prior to cross-examina-

tion of State's witness John York Jr., that counsel be allowed to examine any witnesses' statements that had been reduced to writing, and failed to make an *in camera* inspection of the writing.

Mr. York is defendant's brother-in-law. York testified much as we have already stated the State's evidence to be. York further testified that the morning after the tractor was parked at his home he went to work around 6:00 a.m. York returned home at 4:00 p.m. and backed the tractor away from his shed so he could get some tools and do some gardening. York testified that he moved the tractor by just "touching the two wires in the front together."

York left the tractor where he had parked it and went to work the next day, 7 June. Upon his return, York's wife informed him that carloads of people had stopped to examine the tractor that day. York then looked at the tractor, along with his landlord Baxter Varner, and asked Varner to call Kinlaw International. Varner called, and it was at this point that Maxwell Kinlaw, owner of Kinlaw International, first learned that his tractor was missing.

When the prosecution concluded its direct examination of York, defense counsel moved to examine any witnesses' statements that had been reduced to writing. The trial judge denied the motion, and defendant objected. The denial violated defendant's due process rights.

Our Supreme Court points out in *State v. Hardy,* 293 N.C. 105, 127, 235 S.E. 2d 828 (1977), that the United States Supreme Court has held "the prosecutor is constitutionally required to disclose . . . *at trial* evidence that is favorable and material to the defense." *See United States v. Agurs,* 427 U.S. 97, 49 L. Ed. 2d 342, 96 S.Ct. 2392 (1976). Due process is concerned that the suppressed evidence might affect the outcome at trial. *Hardy* at p. 127.

The issue then becomes: Who is to decide what evidence is favorable and material to the defense? The federal government has answered the question by providing that a defendant is *automatically* entitled to inspect, immediately prior to cross-examination, any prior statement of a material State's witness. *See Jencks v. United States,* 353 U.S. 657, 1 L. Ed. 2d 1103, 77 S. Ct. 1007 (1957); *See also* 18 U.S.C. § 3500.

The North Carolina Supreme Court has mandated a different procedure. The Court held in *Hardy,* at p. 128, that when a specific

State v. Voncannon

request is made at trial for disclosure of evidence in the State's possession, the judge must *"at a minimum,* order an *in camera* inspection and make appropriate findings of fact.... [I]f the judge, after the . . . examination, rules against the defendant . . . , the judge should order the sealed statement placed in the record for appellate review." (Emphasis added.)

The procedure outlined by our Supreme Court is imminently logical. It insures defendant that no material, exculpatory pretrial statement will be suppressed. The procedure also provides the appellate branch with the text of the statement so that upon review we may effectively determine whether the defendant's substantive due process rights have been protected.

The trial court failed to follow the *Hardy* procedure when it denied defendant's motion and failed to make the *in camera* inspection prior to cross-examination.

Defendant's procedural due process rights were violated.

For the reason set out above, defendant must be granted a

New trial.

Judge ARNOLD concurs.

Judge HEDRICK dissents.

Judge HEDRICK dissenting.

I respectfully dissent from that portion of the majority opinion which awards defendant a new trial on the grounds that defendant's due process rights were violated. Since the procedure suggested by our Supreme Court in *Hardy* with respect to the *in camera* inspection of the statement was not followed by the trial judge in the present case and we do not have in the record before us the statement of the witness in question, we cannot say that the error committed was not prejudicial. I can say, however, in my opinion the error was harmless beyond a reasonable doubt. The obvious purpose of letting the defendant examine the statement immediately before cross-examination is to allow the defendant to use such statement to impeach the witness. The evidence of defendant's guilt in the present case is not at all dependent upon the testimony of the brother-in-law. The record is replete with other evidence that the tractor was stolen and the defendant's own sister

described in detail the circumstances surrounding the tractor being brought to their home and parked near the barn until the following day. The testimony of the witness John York is essentially identical to that of his wife, except that the wife's testimony is more detailed with respect to the fact that defendant was present when the tractor was brought to the house and parked near the barn. John York did not even testify that the defendant was present when the tractor was brought to his home. Obviously, the wife's testimony is more damaging to defendant than that of her husband. The husband was not present when defendant talked to the wife, but the wife was present when defendant talked to her husband.

I realize, however, that the evidence of defendant's guilt is largely circumstantial; however, any impeachment of the testimony of John York which might have been accomplished by defendant by the use of the statement John York gave the investigating officers would not make the circumstantial evidence against defendant any less convincing.

In my opinion any error committed by the court's not requiring the District Attorney to allow defendant to see the statement of John York was harmless beyond a reasonable doubt. G.S. § 15A-1443(b).