STATE OF NORTH CAROLINA v. LEE ROY MILLER AND WILLIAM "BILL" DENNIS

No. 8223SC620

(Filed 1 March 1983)

**1. Criminal Law § 92.4— consolidation of multiple charges against defendant proper**

Where a solicitation to commit arson charge and a burning of a building charge both involved the same structure, it was not error for the trial court to consolidate the two charges against defendant. G.S. 15A-926(a).

**2. Criminal Law § 92.1— denial of motion to sever trial from codefendant proper**

Where both defendants were charged with violations of the same statute, both testified, both were subject to cross-examination and both denied guilt which precluded their defenses from being antagonistic, defendant failed to show that he had been deprived of a fair trial by consolidation or by denial of his motion to sever his trial from that of his codefendant who was also charged with burning a building under construction.

**3. Jury § 5.1— reopening voir dire of one juror—no error**

The trial court did not err in allowing the State to reopen its *voir dire* of one juror and to challenge the juror peremptorily after the jury had been passed by the State, but before being impaneled, where the juror stated that he had talked with the defendant less than a week after the fire in question, during the investigation and before any charges were filed. G.S. 15A-1214(g).

**4. Criminal Law § 87— prospective juror becoming witness for State—no duty to give witness list to defendant**

There is no requirement for the State to furnish a list of the prospective witnesses to defense counsel at any stage of the proceedings. Where a witness came to the court as a member of the jury panel, and where the State first learned of this potential witness during the *voir dire* examination of the

1

*witness as juror, the State was free to call the prospective juror as a witness at trial.*

**5. Criminal Law § 99— bench conference by judge with juror—sufficient disclosure—no prejudicial error**

While court was still in session and before any jurors left, and where the judge had just announced that court was about to recess for the day, with all jurors to return on Saturday, there was no prejudicial error in the trial judge having a bench conference of two minutes duration with a juror in the presence of the other jurors since there was sufficient disclosure to defense counsel that the juror had approached the trial judge and asked to be excused from deliberating from the case.

**6. Bills of Discovery § 6— denial of motions to produce prior statements of witnesses and criminal records of witnesses**

The trial court did not err in denying defendant's motions to produce prior statements of the State's witnesses made to the police officers and criminal records of witnesses since G.S. 15A-903 in conjunction with G.S. 15A-904 limits the extent of disclosure of evidence by the State to the persons and things mentioned, and those items are not mentioned in the statutes.

**7. Criminal Law § 124— verdict sheet signed by other than original foreman**

The verdict as received in the courtroom conformed to G.S. 15A-1237 even though it was signed by a juror different from the juror who had earlier orally responded to the judge that he was the foreman.

**8. Criminal Law § 34.4— evidence of unrelated crimes—codefendant "opening the door"**

The trial court did not err in the admission into evidence of unrelated crimes by defendant where the State's evidence was relevant to explain or rebut facts solicited by the codefendant, and where the exceptions to the evidence were on a subject matter to which the codefendant had opened the door.

**9. Criminal Law § 34.4— motion in limine concerning evidence of other offenses—condition not met—admission not error**

Where the trial court granted defendant's pretrial motion to prohibit the district attorney from introducing evidence or making reference to the appellant being involved in two cases charging him with conspiracy to commit armed robbery on the condition that neither the defendant nor his codefendant bring the substance or anything regarding the requested motion *in limine* into evidence and the codefendant did "open the door," the trial court did not err in allowing evidence of the two unrelated crimes.

**10. Criminal Law § 107.2— variance between indictment and proof not fatal**

A variance between the indictment, which alleged that defendant solicited a man to commit arson of a building on or about 1 June 1980, and the evidence which showed the offense to have occurred about the last of April or the first of May, 1980 was not fatal.

State v. Miller

11. **Arson and Other Burnings § 5— failure to submit instruction on presumption that fire resulted from accident proper**

    The trial court properly failed to instruct the jury that there is a presumption that the fire resulted from an accident where there was evidence that one of the codefendants willfully and intentionally set the fire by use of a highly flammable material; that when the material was spread around, the fumes were very strong; and that when the same codefendant did ignite the material, the fire went so fast it almost blew him up.

12. **Criminal Law § 117.3— testimony by State's witnesses—grants of immunity properly before jury**

    Where there was actual knowledge of two State's witnesses testifying because of immunity from prosecuting them for offenses in another county which was made well known to the jury and which was sufficiently explained to the jury in the judge's final charge, and where, at the conclusion of the charge, there was no request for further clarification or additional instructions, there was no prejudicial error even though no instruction was given by the judge prior to the State's witnesses testifying. G.S. 15A-1052(c).

13. **Criminal Law § 51.1— qualification of arson expert**

    The trial court did not err in allowing a witness to testify as an arson expert where the witness testified he was a forensic chemist whose major area of responsibility was "to examine and analyze fire evidence submitted to" the SBI laboratory office, and where as soon as the State started establishing his background by asking about his qualifications, each defense counsel stipulated that the witness was an expert without limitation as to field.

14. **Criminal Law § 43— photographs—limiting instructions**

    While the record showed no limiting instructions were given at the moment certain photographs were received into evidence, the court did give appropriate instructions in its final charge to the jury.

APPEAL by defendants from *Davis, Judge.* Judgment entered 10 October 1981 in Superior Court, YADKIN County. Heard in the Court of Appeals 10 January 1983.

Lee Roy Miller was charged with procuring the arson of a building under construction in violation of G.S. 14-62.1 and with solicitation of arson in violation of G.S. 14-2. Upon the District Attorney's oral motion, these two charges were consolidated for trial and simultaneously were joined for trial with the case of William "Bill" Dennis. Dennis was charged with violation of G.S. 14-62.1, burning a building under construction. In each of the several cases, the building alleged was the Town Diner in Yadkinville.

A jury found both defendants guilty of all charges. On 10 October 1981, the court entered a judgment on each verdict wherein

defendants were sentenced in each case to imprisonment for a minimum of eight years and a maximum of ten years. Defendants appealed.

Other facts pertinent to a specific assignment of error will be included in the opinion as each assignment is discussed.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Steven F. Bryant, for the State.*

*Zachary, Zachary & Harding by Warren E. Kasper for defendant appellant Miller.*

*Charles R. Redden for defendant appellant Dennis.*

BRASWELL, Judge.

I. DEFENDANT MILLER'S APPEAL

[1]   In defendant Miller's first argument, he contends that consolidation for trial of the two charges against him lacked the transactional connection required by G.S. 15A-926(a) and that he was, therefore,   precluded from obtaining a fair trial in either case.

G.S. 15A-926(a) furnishes authority for joinder of offenses by providing that "Two or more offenses may be joined in one pleading or for trial when the offenses, whether felonies or misdemeanors or both, are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan." In construing this statute, the following rule was stated in *State v. Oxendine*, 303 N.C. 235, 240, 278 S.E. 2d 200, 203 (1981):

> "[I]n deciding whether two or more offenses should be joined for trial, the trial court must determine whether the offenses are '*so separate in time and place* and *so distinct in circumstances* as to render the consolidation unjust and prejudicial to defendant.' *State v. Johnson*, 280 N.C. 700, 704, 187 S.E. 2d 98, 101 (1972). Thus, there must be some type of 'transactional connection' between the offenses before they may be consolidated for trial. [Citations omitted.] In addition, the trial judge's exercise of discretion in consolidating charges will not be disturbed on appeal absent a showing

State v. Miller

that the defendant has been denied a fair trial by the order of consolidation. [Citations omitted.]"

We believe the trial court's ruling was proper in this case because the solicitation to commit arson charge and the burning of the building charge both involved the same structure, the Town Diner in Yadkinville. The offenses, therefore, constituted a transaction to burn the diner.

[2] The basis of defendant Miller's second argument is the denial of his motion to sever his trial from that of this codefendant, Dennis, who was also charged with burning the same building under construction.

> "Consolidation of cases for trial is generally proper when the offenses charged are of the same class and are so connected in time and place that evidence at trial upon one indictment would be competent and admissible on the other. [Citations omitted] As a general rule, whether defendants who are jointly indicted should be tried jointly or separately is in the sound discretion of the trial court, and, in the absence of a showing that appellant has been deprived of a fair trial by consolidation, the exercise of the court's discretion will not be disturbed upon appeal. [Citations omitted.]"

*State v. Brower,* 289 N.C. 644, 658-59, 224 S.E. 2d 551, 561-62 (1976). *State v. Lake,* 305 N.C. 143, 286 S.E. 2d 541 (1982).

In this case, both defendants were charged with violation of the same statute, both testified, both were subject to cross-examination, and both denied guilt which precluded their defenses from being antagonistic. As stated in *State v. Lake, supra,* at 147, 286 S.E. 2d at 543, "both were charged with accountability for the same offense." Defendant has failed to show that he has been deprived of a fair trial by consolidation or by denial of his motion to sever, and his argument should therefore be overruled.

Three assignments of error relate to actions by the trial judge with respect to jurors:

> (1) allowing the State to reopen its *voir dire;*

> (2) allowing a prospective juror who was peremptorily excused by the State to become a witness for the State, and

(3) conducting an off-record conference with a juror.

*In each of these assignments we find no error on the facts shown.*

[3] (1) After the jury had been passed by the State, but before being impaneled, the State moved to reopen its *voir dire* of one juror, giving as reason: "Based on the response of one of the jurors, Mr. Shore." After the court allowed the motion, the first question by the prosecutor was: "You stated that you talked to the defendant about the fire?" Shore answered that he had talked with the defendant less than a week after the fire, during the investigation and before any charges were filed. Whereupon the State peremptorily excused the juror. In allowing the reopening of the evidence and the subsequent peremptory challenge, the court said it was doing so "in its discretion, based upon a response made by this particular juror that he had on a previous occasion discussed this particular case with one of the defendants."

G.S. 15A-1214(g)[1] gives the trial judge the discretion to reopen the *voir dire* examination of a juror even if he has previously been accepted by both the State and the defendant. The judge is also given statutory discretion to allow a party to exercise an unused peremptory challenge. A good reason to reopen the examination was shown to exist, and the trial judge properly exercised his discretion. *State v. Parton*, 303 N.C. 55, 70-71, 277 S.E. 2d 410, 421-22 (1981).

[4] (2) Ervin Johnson came to court as a member of the jury panel. Johnson later became a witness for the State. When in the

---

1. "(g) If at any time after a juror has been accepted by a party, and before the jury is impaneled, it is discovered that the juror has made an incorrect statement during voir dire or that some other good reason exists:

   (1) The judge may examine, or permit counsel to examine, the juror to determine whether there is a basis for challenge for cause.

   (2) If the judge determines there is a basis for challenge for cause, he must excuse the juror or sustain any challenge for cause that has been made.

   (3) If the judge determines there is no basis for challenge for cause, any party who has not exhausted his peremptory challenges may challenge the juror.

Any replacement juror called is subject to examination, challenge for cause, and peremptory challenge as any other unaccepted juror."

box as a prospective juror the State had peremptorily excused Johnson. At no time was Johnson's name on any list of State's witnesses. When objection was made to Johnson being called as a witness, the district attorney stated that he did not know of the witness when the list was given to the court and that Johnson was being called to establish the fact that the defendants had been seen together, this information having been gained on *voir dire.*

Upon separate examinations by the court of the witness and the impaneled jurors, the court found that neither had discussed the case with the other. Although no request by counsel was made to be allowed to question the jury at the time the court questioned them about Johnson, defendant now argues that error was committed because he was not allowed to question the jury, because a former member of the jury panel became a State's witness and because the juror-witness's name was not on any witness list. In 81 Am. Jur. 2d *Witnesses* § 102, p. 147 (1976), we find this statement of the law: "In the absence of a statute providing otherwise, it has been held that a juror is not incompetent to testify as a witness solely because of having been sworn and impaneled in the case, if he is otherwise competent."

We hold that Johnson was competent to be a witness. The mere fact that Johnson had been a member of the jury panel does not automatically disqualify him. The State first learned of this potential witness during the *voir dire* examination. At such point either party was free to call Johnson as a witness. "[T]he current general rule is that anyone can be a witness who has sufficient intelligence and is sensible of the obligation of an oath or affirmation." 1 Brandis on North Carolina Evidence § 53, p. 198 (1982). Brandis also tells us at § 16, p. 52, that "In a criminal case it is the prerogative of the prosecuting officer to determine what witnesses shall be called and examined for the State." *State v. Lucas,* 124 N.C. 825, 32 S.E. 962 (1899) (witnesses were sworn for the State but not placed on the stand). *See* 81 Am. Jur. 2d *Witnesses* § 2, p. 26 (1976).

Subchapter XII of G.S. 15A covers the subject of criminal "Trial Procedure in Superior Court." Article 71 thereof encompasses statutes on "Right to Trial by Jury." Nowhere is there any mention of a requirement for a witness list. While custom has

been to exchange witness lists between counsel for use in the jury *voir dire* in criminal cases prior to questioning, we know of no requirement for the State to furnish a list of the prospective witnesses to defense counsel at any stage. As observed by our Supreme Court, ". . . the legislature rejected a proposal that would have allowed defendants to discover the names . . . of witnesses the State intended to call . . . ." *State v. Hardy,* 293 N.C. 105, 124, 235 S.E. 2d 828, 839 (1977). Compare civil practice as mentioned in the sample Order On Final Pretrial Conference, 4A N.C.G.S. Appendix I and Note thereunder.

[5] (3) A bench conference of two-minute duration was had by the trial judge with a juror at the conclusion of all evidence on Friday evening. The judge had just announced that court was about to recess for the day, with all jurors to return on Saturday. In his cautionary remarks the judge said: "I know I had a request from one of the jurors—I am sure all of you have requests. And I apologize sincerely for having to make you folks come back tomorrow but I don't have any choice about the matter. I would say this, after all of you are back tomorrow, I will consider that one request I had this morning. I cannot consider it at this time. If one of the other jury members got sick and was unable to be back, I would have a serious problem."

While court was still in session and before any jurors left, upon request of the judge, juror Davis approached the bench and the unrecorded conference occurred in the presence of the other jurors.

In his brief, but not in the record, counsel for defendant Miller says: "Counsel were later informed in chambers by the Court that the juror had previously approached the trial judge and asked to be excused from deliberating in the case as the Court session had been extended into Saturday and interfered with his work." The juror was never excused.

In seeking to distinguish *State v. Tate,* 294 N.C. 189, 239 S.E. 2d 821 (1978), counsel said in his brief that the "defendant immediately renewed his motion for a mistrial and cannot be said to have waived his objection" to the bench conference. However, this argument is not borne out by the record. No objections appear in the record. No motion for a mistrial appears in the record at this juncture.

After sheriff's officers had escorted the jurors from the courtroom, the record does show that counsel for defendant Miller said, after moving for nonsuit and for a directed verdict: "And we renew our motion for a mistrial." No grounds were given. No motion for a mistrial having been freshly made at the time of the occurrence now complained of, counsel's reference to renewing his motion for a mistrial apparently refers to an earlier procedure in the trial when counsel did move for a mistrial.

Taking the record as presented to us, in accordance with *State v. Williams*, 304 N.C. 394, 415, 284 S.E. 2d 437, 450-51 (1981), *cert. denied*, --- U.S. ---, 72 L.Ed. 2d 450, --- S.Ct. --- (1982), we have considered the assignment of error and find nothing which would indicate anything improper or prejudicial to have occurred at the bench conference. In *State v. Tate, supra*, at 198, 239 S.E. 2d at 827, while disapproving of the practice of private bench conversations with jurors, our Supreme Court went on to say: "At least, the questions and the court's response should be made in the presence of counsel. The record indicates, however, that defendant did not object to the procedure or request disclosure of the substance of the conversation. Failure to object in apt time to alleged procedural irregularities or improprieties constitutes a waiver." Even should we accept the judge's in-chamber disclosure to counsel as related in defendant's brief, there was sufficient disclosure in accordance with *State v. Tate, supra*. No prejudicial error appears. This assignment of error is overruled.

[6] In the third question argued, defendant contends that the trial court erred in denying defendant's motions to produce prior statements of the State's witnesses made to police officers and criminal records of witnesses. The language of the first motion was ". . . to reveal any statements made by persons who have testified or will testify on behalf of the State." Pertinent language of the second motion asked the court ". . . for entry of an order directing the State to investigate and disclose . . ." all consideration or promises made to government witnesses, for knowledge of any prosecutions, investigations, or possible pending prosecutions against witnesses, for knowledge of any probationary, parole or deferred prosecution status of any witness, for all felony conviction records, and for "all records and information showing prior misconduct or bad acts committed by the witness."

The transcript shows that the defendant was informed of the grants of immunity to two people, Mr. and Mrs. Morland. When the court inquired if any other witnesses had been granted immunity, the district attorney replied: "Not through me, no, sir." All other requests in the motions were denied by the court.

Unfortunately for the defendant our General Assembly has not gone as far in the permissible scope of pretrial discovery as defendant contends. G.S. 15A-903 in conjunction with G.S. 15A-904 limits the extent of disclosure of evidence by the State to the persons and things mentioned. No discovery statute requires the State "to investigate" matters sought by the defendant to be investigated. Defendant cites and relies on *State v. Silhan*, 302 N.C. 223, 275 S.E. 2d 450 (1981); *State v. Hardy, supra,* and *State v. Voncannon*, 49 N.C. App. 637, 272 S.E. 2d 153 (1980). However, *Hardy, supra,* at 125, 235 S.E. 2d at 840, held that ". . . where a statute expressly restricts pretrial discovery, as does G.S. 15A-904(a), the trial court has no authority to order discovery." *Hardy* also pointed out that ". . . the legislature rejected a proposal that would have allowed defendants to discover the names, addresses, and criminal records of witnesses the state intended to call, . . ." *Id.* at 124, 235 S.E. 2d at 839.

Unlike the action of counsel for the defendant in the *Voncannon* case, *supra,* at 639-40, 272 S.E. 2d at 156, the defendant here made no motion immediately prior to cross-examination of the State's witnesses that he be allowed to examine any witnesses' statements that had been reduced to writing or that the judge make an in camera inspection of the writing before the cross-examination began. We also note that our Supreme Court reversed *Voncannon* in 302 N.C. 619, 276 S.E. 2d 370 (1981). Although the issue discussed here was not discussed in the Supreme Court opinion, the case provides no authority for defendant's position.

Upon examination of *Silhan, supra,* we find the fact situation on the subject of discovery quite different from our case. In *Silhan* the defense motions to examine the files of the district attorney for exculpatory evidence were made at trial after evidence came to light that the results of fingerprint tests had not been revealed to defendant. While the trial judge ordered the district attorney to produce any known exculpatory evidence, the trial

State v. Miller

judge was upheld in his denial of defendant's motion "to have these files surrendered to the court 'for appellate purposes.'" *Silhan, supra,* at 240, 275 S.E. 2d at 465.

Defendant has failed to show any prejudicial error in this case on the subject of discovery or disclosure.

[7] In his seventh question presented for review defendant contends that G.S. 15A-1237(a) was violated in that the verdict of the jury was not signed by its foreman. A search of the record shows that the verdict sheet itself and the courtroom clerk's jury record do reveal that juror Henry Vanhoy signed the verdict sheet indicating that he was foreman. The problem originates from an apparent difference in foreman at a time when the jury was returned into the courtroom, but before any verdict was received or seconded. At that earlier time juror James Davis orally responded to the judge that he was the foreman. This response of Davis came after the judge had brought the jury back into the courtroom at 6:20 p.m. on Saturday night to ask questions seeking information as to whether any verdict in any case had been reached, and to inquire if they wanted "a recess at this time and have your supper." No actual verdict was taken at that time. The jury returned to its room, then came back to court and said it wanted no recess, and returned to deliberating. In his final words before the jury resumed its deliberations, the judge said: "When you have reached a unanimous verdict, knock on the door and the bailiff will attend your call." At 6:52 p.m. the jury returned with a verdict in all three cases. The transcript lists the foreman only as "Mr. Foreman." The signed verdict sheet has the handwritten name of Henry Vanhoy.

In its consideration of G.S. 15A-1237 our Supreme Court has said that: "This section is intended to aid the trial court in avoiding the taking of verdicts which are flawed by the inadvertent omission of some essential element of the verdict itself." *State v. Goodman,* 298 N.C. 1, 15-16, 257 S.E. 2d 569, 580 (1979). In the case before us there is no allegation of omission of any essential element of the verdict itself. The verdict was in writing, it was signed by a juror who indicated in writing that he was the foreman. In practice it is not unheard of for a jury during its deliberations to change foreman. The verdict as received in the courtroom does conform to the statute.

In *State v. Collins*, 50 N.C. App. 155, 272 S.E. 2d 603 (1980), the verdict was not signed by the foreman. Since the verdict as received and recorded in court did substantially answer the issues and permit judgment to be pronounced, we found no merit to the defendant's contention that the form was not signed. While here the defendant urges us to reconsider *Collins* and overrule it, we find no new reasoning or basis for doing so. This assignment of error is without merit.

The eighth question presented for review contends that the court abused its discretion or expressed its opinion during the course of the trial by seven actions:

1. failing to limit the scope of redirect examination,

2. allowing a State's witness to be recalled,

3. refusing to allow a continuing line of objections,

4. failing to properly instruct on illustrative evidence,

5. allowing leading questions,

6. permitting non-corroborating evidence, and

7. permitting incompetent evidence and expressing his opinion.

We have carefully reviewed each of these assignments and find no prejudice which would justify awarding defendant a new trial. In each instance the action complained of was within the judge's discretion, and no abuse is revealed. A proper exercise of the judge's discretion in making an evidentiary ruling does not rise to the level of an expression of an opinion on the evidence or constitute an expression of opinion about the witness by the court. A full reading of the record does not reveal a cumulative impact of unfairness or impartiality. When taken as a whole, the actions do not constitute an expression of an opinion by the judge or violate G.S. 15A-1222 or G.S. 15A-1232 as alleged.

[8] In his ninth question presented for review defendant alleges that the court's erroneous admission into evidence of unrelated crimes deprived him of a fair trial. The State contends that the trial court did not err in allowing evidence of another crime after defendant had "opened the door" to this testimony on cross-examination.

Clyde Morland testified as a witness for the State. Codefendant Dennis's counsel, Mr. Redden, cross-examined Mr. Morland. Two questions were asked by Mr. Redden, with the responses as shown:

"Q. When you were arrested for a variety of charges, were some of those serious charges here in Yadkin County?

A. Yes.

Q. Have you been promised immunity for your testimony in those charges?

A. Yes, sir."

Immediately the witness was returned to the State and the prosecutor opened with: "What are those charges that you have been promised immunity in?" The answer was, "Armed robbery"; and when asked later if he had any codefendants in those cases, Morland replied that they were "Lee Roy Miller, and Bill Dennis, and my wife." Further explanation of the armed robbery of a poker game was given, over objection. In response to the arguments of counsel which then followed defendant's motion for a mistrial, the court said: "Don't you think that would be utterly ridiculous for you (defense attorneys) to bring out the fact that he was promised immunity for something and the State not be able to show what that immunity was."

Under this assignment of error and question for review counsel has grouped 22 exceptions. Some of the exceptions are to testimony by State's witness Betty Morland, wife of Clyde Morland, who testified after her husband. The substance of her testimony of which complaint is here made related to evidence about an armed robbery of a poker game, that one "Doc" Dockery had burned another building for defendant, and that defendant had shown her and her husband a number of houses to be robbed.

Both defendants later testified during the presentation of their own cases.

In discussing an "opening the door" fact situation involving a polygraph test, which test results are generally not permitted, our Supreme Court said:

"Under such circumstances, the law wisely permits evidence not otherwise admissible to be offered to explain or

rebut evidence elicited by the defendant himself. Where one party introduces evidence as to a particular fact or transaction, the other party is entitled to introduce evidence in explanation or rebuttal thereof, even though such latter evidence would be incompetent or irrelevant had it been offered initially."

*State v. Albert*, 303 N.C. 173, 177, 277 S.E. 2d 439, 441 (1981). When the whole of the case before us is considered, the exceptions to the evidence were on a subject matter to which the codefendant had opened the door. The State's evidence was relevant to explain or rebut facts elicited by the codefendant. Even if we should consider the admission of this evidence erroneous, defendant is not entitled to relief under the harmless error rule. *State v. Taylor*, 304 N.C. 249, 270, 283 S.E. 2d 761, 775 (1981); G.S. 15A-1443(a).

[9] The defendant's motion *in limine* is the subject of his 10th question presented for review. The court granted the defendant's pretrial motion to prohibit the district attorney from introducing evidence or making reference to the appellant being ". . . involved as perpetrator in two cases charging him with conspiracy to commit armed robbery, said offenses alleged to have occurred in February 1981," and then pending in Yadkin County. In its ruling the court said: "The motion in limine is granted on condition that the defendant does not bring the substance or anything regarding the requested motion in limine." In a clarification in the following exchange with counsel, the court explained: "I am saying I denied the motion unless you open the door, either of you open the door."

The presently challenged evidence did "come in," as related above under the 9th question presented for review. Upon the reception of this testimony into evidence, each defendant moved for a mistrial. In the discussion that followed, the court said:

"Counselor, I admonished both of you prior to the trial of this case not to bring up anything that would allow any testimony regarding any armed robberies and granted your motion in limine based upon the fact that neither of you mention anything that opened the door. I, at that time, expressly told you that once you opened the door . . . that neither of you bring up the matter."

In his brief defendant contends that the limiting condition placed on him by the court's ruling was improper and contends that the court's original order of exclusion implicitly contained a finding that the evidence was irrelevant and prejudicial, and that defendant is not responsible for his codefendant's opening the door. We disagree with defendant's contentions based on our earlier discussion of "opening the door" in our review of question number 9. No limiting instructions were requested when the evidence was received. Defendant argues that *State v. Davis* and *State v. Fish*, 284 N.C. 701, 202 S.E. 2d 770, *cert. denied*, 419 U.S. 857, 42 L.Ed. 2d 91, 95 S.Ct. 104 (1974), is analogous to his position. However, in *Davis*, none of the three defendants testified, and the court found that ". . . competent evidence against [defendants] so positively establishes their guilty participation in [the victim's] murder that the incompetent evidence, even in its totality, was harmless beyond a reasonable doubt." *Davis, supra*, at 722, 202 S.E. 2d at 784. We find no merit in this assignment.

[10] The defendant's motion to dismiss at the close of the evidence is brought forward as question 11 presented for review and is argued under the term "non-suit."

Defendant concedes in his brief "that there is sufficient evidence in the record to have supported the submission of the charge of procuring arson to the jury." The question advanced for review is whether there was a fatal variance between the indictment, which alleged that defendant solicited Crawford to commit arson of the building on or about 1 June 1980, and the evidence which showed the offense to have occurred about the last of April or the first of May, 1980.

We hold that the defendant's evidence that a State's witness, Crawford, was not present in North Carolina but was in Chicago at the time alleged in the indictment, goes to the weight to be given the witness Crawford's testimony and is not a fatal variance requiring a dismissal of the charge. *See State v. King*, 256 N.C. 236, 123 S.E. 2d 486 (1962); *State v. Bailey*, 49 N.C. App. 377, 271 S.E. 2d 752 (1980), *disc. rev. denied*, 301 N.C. 723, 276 S.E. 2d 288 (1981); *State v. Smith*, 40 N.C. App. 72, 252 S.E. 2d 535 (1979); *State v. Locklear*, 33 N.C. App. 647, 236 S.E. 2d 376, *disc. rev. denied*, 293 N.C. 363, 237 S.E. 2d 851 (1977). The motion to dismiss, or for nonsuit, was properly denied.

The issue of the court's failure to declare a mistrial is the defendant's 12th question presented for review. Through 23 exceptions defendant contends that he suffered substantial and irreparable prejudice at three stages of the trial: when the court allowed evidence of unrelated crimes, when the cases were consolidated in the face of his motion *in limine* by limiting his approach to the evidence, and when the judge held an off-record conference with a juror.

No new arguments were brought forth under this assignment. The facts were presented, discussed, and ruled upon earlier in this opinion. We find that no prejudice or abuse of discretion has been shown. The applicable rule is well stated in *State v. Allen*, 50 N.C. App. 173, 176, 272 S.E. 2d 785, 787 (1980), *app. dismissed*, 302 N.C. 399, 279 S.E. 2d 353 (1981): "A motion for mistrial in a non-capital case is addressed to the sound discretion of the trial judge, and his ruling on the motion will not be disturbed on appeal absent a gross abuse of that discretion."

[11] Questions 13 and 14 of those groupings of errors presented for review deal with jury instructions. In the assignment involving question 13, defendant tendered a request that the judge instruct the jury with regard to a presumption concerning the accidental nature of fire. Appellant alleges in his brief that he adapted his request from language in *Phelps v. Winston-Salem*, 272 N.C. 24, 157 S.E. 2d 719 (1967), and also cites 5 Am. Jur. 2d, *Arson and Related Offenses* § 46, p. 836 (1962). Appellant concedes that "The presumption that fire results from accident rather than intentional action does not appear to have been discussed in any criminal case in this State."

When a requested instruction on a feature of the case is aptly tendered, and when the requested instruction correctly states the law based upon the evidence of the case, it is error for the court to fail to give in substance the requested instruction. *State v. Beach*, 283 N.C. 261, 196 S.E. 2d 214 (1973); *State v. Boyd*, 278 N.C. 682, 180 S.E. 2d 794 (1971). The requested instruction reads as follows:

"This is an unexplained fire. Proof of the burning alone is not sufficient to establish the defendant's guilt. If nothing more appears, the presumption of the law is that the fire was the result of accident or some providential cause. There can be

no verdict of guilt in this case unless the State proves to you beyond reasonable doubt, by either direct or circumstantial evidence not only the intentional burning of the property in question, but also that the fire did not result from natural or accidental causes."

The tendered instruction was not justified under the evidence. Far from being "an unexplained fire" as is the positive statement in the instruction, the transcript shows, through the testimony of Clyde Morland, that Bill Dennis willfully and intentionally set the fire by use of a highly flammable material, a mixture of naphtha and gasoline; that when the material was spread around, the fumes were very strong; and when Dennis did ignite it, the fire went so fast it almost blew him up. The payment of money was given as the reason Dennis did the act. This was not an allegation of a negligently set fire, as in *Phelps, supra,* and the evidence showed a known cause for the burning, instead of an unknown cause or accident. The tendered instruction being incorrect in its application of the law to this case, the trial judge correctly refused to give it. This assignment is without merit.

[12] The second jury instruction assignment of error, brought forward under question 14, alleges that the judge erred by failing to instruct the jury regarding grants of immunity to State's witnesses, Clyde Morland and Betty Morland, as required by G.S. 15A-1052(c). This question was raised by an addendum to the record which placed exceptions in the transcript prior to the testimony of Clyde and Betty Morland.

In his charge the judge instructed the jury as follows:

"There is evidence in this case which tends to show that Clyde and Betty Morland were testifying under a grant of immunity in some other cases and not these particular cases. If you find that they testified in whole or in part for this reason, you should examine their testimony with great care and caution in deciding whether or not to believe them.

If after doing so, you believe their testimony in whole or in part, you should treat what you believe the same as any other believable evidence."

On the subject of grants of immunity in court proceedings, G.S. 15A-1052(b) speaks of the district attorney's procuring an

order issued by a Superior Court Judge for the witness to testify, and in (c) states that "In a jury trial the judge must inform the jury of the grant of immunity and the order to testify prior to the testimony of the witness under the grant of immunity. During the charge to the jury, the judge must instruct the jury as in the case of interested witnesses."

In construing this statute our Supreme Court in *State v. Hardy, supra,* held that while the statute specifies "prior" to the testimony, there was no requirement that the instructions be given "immediately" preceding the witnesses' testimony, and that the instruction about scrutinizing the testimony is properly given during the "final" charge to the jury.

Our present facts are different. Here there is nothing in the record to indicate there was ever an order for either witness to testify. According to the record, the immunity as orally given by the district attorney was divulged to counsel pretrial and at court during motion hearings. In the presence of the jury each defense counsel questioned Clyde Morland about his testifying because of immunity given to him. Neither Mr. nor Mrs. Morland were codefendants in the present cases. The immunity concerned other offenses in another county in which the witnesses were directly involved.

The transcript reveals in the charge conference that any instructions requested by defendants were granted except defendant Miller's request regarding a presumption of accidental fires (which subject is discussed under question 13 above).

As pointed out in *Hardy, supra,* at 120, 235 S.E. 2d at 837, "Obviously, the legislature intended for the jury to know the witness was receiving something of value in exchange for his testimony which might bear on his credibility." We hold here that actual knowledge of the Morlands testifying because of immunity from prosecuting them for offenses in another county was made well known to this jury and sufficiently explained to the jury in the judge's final charge. At the conclusion of the charge there was no request for further clarification or additional instructions. As expressed in *State v. Harris,* 290 N.C. 681, 699-700, 228 S.E. 2d 437, 447 (1976), and cited with approval in *Hardy, supra,* at 121, 235 S.E. 2d at 838, "[I]t must be borne in mind that every poorly stated instruction does not result in such prejudice as to require a

new trial. In order to constitute reversible error, it must be made to appear that, in light of all the facts and circumstances, the challenged instruction might reasonably have had a prejudicial effect on the result of the trial." Even though no instruction was given in this case by the judge prior to the Morlands testifying, we find no prejudicial error.

Several rule violations concerning exceptions and the certifying of the record on appeal after 150 days are noted. However, because this is a criminal case we have, nonetheless, carefully examined all assignments of error and questions presented for review by each defendant.

As to the defendant Miller's appeal, we find no error.

## II. DEFENDANT DENNIS'S APPEAL

From fourteen assignments of error nine questions are presented for review in the brief. Some of them cover the same issues, evidence, and legal subjects as presented by the appeal of codefendant Miller. We find no error in each of the following questions for the same reasons given under the corresponding discussion of the Miller questions:

a. denial of motion to consolidate,

b. restriction of cross-examination by virtue of the ruling of the court on the motion *in limine*,

c. improper expression of an opinion through the court's rulings and conduct,

d. admission of evidence of other unrelated crimes,

e. improper denial of the motion to dismiss,

f. denial of his motion for a mistrial, and

g. the court's holding an improper off-the-record conference with a juror.

The remaining three questions, numbers 3, 4 and 7 in the brief, deal with evidentiary matters not otherwise discussed. We note that the third question alleged that the court permitted improper leading questions. However, this point was not brought forward in argument in the brief and is deemed abandoned. Even

so, having read the assigned exceptions we find no abuse of discretion.

Question 4 deals with the admission of opinion evidence through Larry Ford as an expert witness, the appellant contending the opinions were incompetent.

The evidence shows that Larry Ford is a forensic chemist employed by the State Bureau of Investigation of North Carolina for eight years. Early in his examination, the district attorney asked, "In this capacity as a chemist for the S.B.I., what are your responsibilities?" Mr. Ford answered that, "My major responsibility is to examine and analyze fire evidence submitted to our office by law enforcement agents throughout the state." The next question was, "What are your qualifications?" Immediately, the record shows Attorney Redden said, "We stipulate that he is an expert." Attorney Kasper said, "Likewise." Whereupon the court said, "Let the record show that it is stipulated by both attorneys for the defendants that this witness is an expert in the field of forensic chemistry."

There was an extensive examination and cross-examination. In particular, the cross-examination by defendant Dennis's counsel concerned the nature and properties of toluene. This substance had been mentioned many times previously. Toluene was stated to be a very volatile substance and was found by chemical analysis of the fire scene material examined by the witness. Toluene is a flammable hydrocarbon. The witness explained how toluene would burn, how it would probably explode if ignited in a sealed area, how it evaporates as a gas and how it is nonsoluble.

The trial judge asked certain questions:

"COURT: . . . Could the gases from toluene cause burn patterns in the floor?

A. Gases would not. Those are flammable liquid patterns.

*   *   *   *

A. Any time you have gas, you would have a situation that would totally involve the volume of the building rather than a confined area.

COURT: Could it cause spalling of concrete?

A. No, sir, it would not, not in a concentrated area on the floor.

COURT: Could it cause a piece of 2 by 4 that was located above the floor level and flushed against another 2 by 4, could it cause it to burn in the fashion that State's exhibit No. 12 is burned?

A. In my opinion, I don't think it would."

There was no objection by defendant and no motion to strike. "An objection to the admission of evidence is necessary to present a contention that the evidence was incompetent." *State v. Thompson*, 26 N.C. App. 171, 174, 215 S.E. 2d 371, 373 (1975).

On re-recross examination, defendant Dennis's counsel asked about spalling from fire on a poured concrete outside floor and fire in an outside oil drum causing concrete to spall. The counsel asked if wind currents could cause burn patterns on floors or walls or any area. The witness gave this answer: "Obviously, the wind current you are talking about would be in this area in question" and was "outside of my expertise." The State's direct evidence had shown that the fire originated inside the closed building and that a witness at the scene heard what sounded like an explosion in the building.

[13] On this evidence the appellant presents two arguments. He first challenges the opinion of Mr. Ford on the ground that he was not an arson expert. On this we rule that since the defendant failed to object at the time, the argument is not properly before us. Nevertheless, the whole of Mr. Ford's testimony reveals that he was an expert in the field in which he was questioned. In particular, this forensic chemist had answered that his area of major responsibility was "to examine and analyze fire evidence submitted to" the S.B.I. Laboratory office by statewide law enforcement officers. As soon as the State started establishing his background for same by asking about his qualifications, each counsel stipulated that the witness was an expert without limitation as to field. The whole record shows him qualified to answer all of the "expert" questions in evidence. *See State v. Culpepper*, 302 N.C. 179, 273 S.E. 2d 686 (1981).

The second argument contends that the district attorney asked Mr. Ford opinion questions as if he were an arson expert.

This argument answers itself from the whole of Mr. Ford's testimony. State's exhibits 14 and 15, properly identified in the evidence as to source, contained fire scene materials which were chemically analyzed by Mr. Ford. Counsel had stipulated that Ford was a forensic chemist. He testified from his personal knowledge about his findings. He answered questions calling for expert knowledge of toluene. The fact that the questions related to toluene and its reaction to fire and heat did not carry the witness outside his field. He had eight years' experience in analyzing fire evidence. We hold his answers were properly admitted.

[14] In his further challenge of alleged incompetent evidence under question 4, appellant contends that the court erred by not giving a requested limiting instruction that certain photograph exhibits be considered only for illustrative purposes. While it is true that the record shows no limiting instructions were given at the moment the photographs were received into evidence, the court did give appropriate instructions in its final charge to the jury, and this assignment of error is without merit.

By his seventh, and final, question for review the appellant charges that the judge committed error when he sustained the State's objection to his question of Officer Ralph Hammesfahr "about his knowledge of insurance proceeds" on the burned building. Appellant alleges in his brief that "the court did not allow the answer to be preserved for the record." This allegation is totally incorrect. The question and answer for the record proper are found in the transcript: "I had no information at the time," to the court's question, and, "No, sir, I didn't know whether the insurance had paid off or not" to counsel's question. Even if these answers had been given in the presence of the jury, it could not have affected the outcome of this case beyond a reasonable doubt. It is also noted that the question was improperly put to this witness and that the objection was properly sustained, because the answer would have been based on hearsay and was not shown to be within the realm of personal knowledge of the officer. This assignment of error is without merit.

In the defendant Dennis's appeal, we find no error.

After examination of the record and the assignments of error, we find that defendants Miller and Dennis received a fair trial, free of prejudicial error.

No error.

Chief Judge VAUGHN and Judge WELLS concur.