STATE v. M. W. EPPS AND NELSON EPPS.

(Filed 15 December, 1943.)

**1. Criminal Law § 52b—**

When defendants in a criminal prosecution, at the close of the State's evidence, move to dismiss and for nonsuit, C. S., 4643, and, after these motions are overruled, introduce evidence but fail to renew such motions at the close of all evidence, the exceptions to the refusal of such motions at the close of the State's evidence are waived.

**2. Larceny §§ 1, 8—**

Upon a prosecution for larceny of hogs, the evidence tending to show that prosecutor's hogs were left at large and wandered off to the premises of one of defendants, where they were secured by this defendant and taken by both defendants to a near-by town and sold, there is no error in a charge by the court that, if defendants took the hogs with intent to deprive the rightful owner thereof and dishonestly and fraudulently appropriated them to their own use and disposed of them, they would be guilty of larceny.

**3. Larceny §§ 5, 8—**

Where the evidence, in a prosecution of two persons for larceny of hogs, tended to show that one defendant secured the hogs wandering on his premises, and that he with the second defendant took the hogs to a near-by town and sold them, there is no error in a charge that before any presumption would arise that the second defendant was the thief, that is presumption from possession, the jury must be satisfied beyond a reasonable doubt that the second defendant was in possession of the hogs, and that they were in his custody and subject to his control and disposition.

**4. Appeal and Error § 29—**

Exceptions not set out in appellant's brief are taken as abandoned. Rule 28.

APPEAL by defendants from *Bone, J.,* at May Term, 1943, of ROBESON.

The defendants were convicted of the larceny of three hogs, the property of Henry Hunt.

The State's evidence tended to show that Henry Hunt owned three hogs, that he left his home on Monday, 25 October, 1942, to attend the funeral of his daughter, leaving the hogs running at large about his home; that upon his return to his home the next day, Tuesday evening, he found his hogs had disappeared; that two weeks later the hogs were located at Rowland, where two of them had been sold to Harmonia King, and one of them to John Thompson; Harmonia King and John Thompson purchased the hogs from M. W. Epps and Nelson Epps, "although M. W. Epps did the talking and transacted the business"; subsequently two of the hogs were returned to Henry Hunt, but the third one was not

so returned as it had been butchered; and the mother of the defendants, in their presence, paid to Henry Hunt $50.00 to "compromise the case."

The defendants' evidence tended to prove that the three hogs of Henry Hunt alleged to have been stolen were running at large, came upon the farm of the defendant, M. W. Epps, and were doing damage to his crops, and after this had been going on for ten or fifteen days, M. W. Epps shut the hogs up for a few days, made inquiry as to whose hogs they were, and not finding this out he carried them to Rowland and sold them to pay for the damage they had done to his crops; that M. W. Epps did not know whose property the hogs were when he sold them; that Nelson Epps, while he went with his brother, M. W. Epps, to Rowland when he sold the hogs, did not know for what purpose M. W. Epps was going until he came to Nelson Epps' home to get him to take him to Rowland; that the hogs were sold at Rowland in broad daylight at 2 .o'clock p.m.; that when M. W. Epps learned that the hogs belonged to Henry Hunt he returned to Rowland and paid back to Harmonia King and John Thompson what they had paid him for the hogs, procured the return of two of the hogs to Hunt, and paid Hunt for the hog which had been slaughtered and could not be returned; that M. W. Epps lived on his own farm near the farm of Henry Hunt, and Nelson Epps lived on a farm adjoining the farm of M. W. Epps.

The jury returned a verdict as to both of the defendants of guilty of larceny as charged in the bill of indictment, and from judgment of imprisonment predicated on the verdict the defendants appealed, assigning error.

*Attorney-General McMullan and Assistant Attorneys-General Patton and Rhodes for the State.*

*J. E. Carpenter for defendants, appellants.*

SCHENCK, J. While there are other exceptions in the record only four are set out in the appellants' brief. Those not so set out in their brief are taken as abandoned by the appellants. Rule 28, Rules of Practice in the Supreme Court, 221 N. C., 562.

Exceptions Nos. 11 and 12 relate to the refusal of the trial judge to sustain the respective motions to dismiss the action and for judgment of nonsuit lodged by each of the defendants when the State had produced its evidence and rested its case. C. S., 4643. After these motions had been overruled the defendants introduced evidence but did not renew their motions to dismiss the action and for judgment of nonsuit. When the motions were not renewed after all the evidence in the case was concluded the defendants waived their exceptions to the refusal of the motions

made at the close of the State's evidence. *S. v. Chapman,* 221 N. C., 157, and cases there cited.

Exception No. 17, set out in the appellant's brief is to an excerpt from his Honor's charge as follows: "If Henry Hunt owned the three hogs in question and they were left on his premises by him and they got out, or by some means got from his place over to the premises of the defendant, Matthew Epps, and were on his premises, and Matthew Epps seeing them there and having in his mind the intent to take them and to deprive the owner, whoever he might be, of his rightful property and to dishonestly and fraudulently appropriate the hogs to his, Matthew Epps', own use, and with that intent in his mind, took these hogs up and carried them away and disposed of them, he would be guilty of larceny as much so as if he had taken them from the premises of Henry Hunt, because if the hogs got out and wandered over to Matthew Epps' place, they were still constructively in the possession of the owner, Henry Hunt." This exception cannot be sustained. The excerpt to which it is addressed is in substantial accord with the excerpt from the charge in *S. v. Holder,* 188 N. C., 561, which was upheld by this Court, and was as follows: "Where property is lost and a person finds it, then the duty of the finder is to keep the property for the purpose of finding the owner and he must use reasonable means for the purpose of finding the owner. If he keeps it and keeps it intact for the owner, he has a right to do that, but if the property is not abandoned but is left by accident or lost and a person finds it and he takes it with the intention at the time of taking it to steal it, he is just as guilty of larceny as if he had gone in the night-time and stolen it secretly."

Exception No. 18, set out in the appellant's brief, is to an excerpt from his Honor's charge as follows: "Now, the evidence here tends to show that Matthew Epps and Nelson Epps were together down at Harmonia King's and had the hogs, sold them to her; however, Harmonia King testified that Matthew Epps did most of the talking. I do not recall that anybody has quoted any language used or said to have been used by Nelson Epps. Before any presumption would arise that he was the thief, that is, presumption from possession, you would have to be satisfied beyond a reasonable doubt that he was in possession of the hogs; that is to say, that they were in his custody and under his control, and subject to his disposition. If the hogs were stolen by Matthew Epps and Nelson Epps was along with him at the time that he stole them and was with him for the purpose of assisting and aiding and encouraging him in the larceny of the hogs, then he would be equally guilty with Matthew Epps."

The excerpt which the exception assails merely states that before any presumption could arise from the possession, the jury must be satisfied

beyond a reasonable doubt that Nelson Epps was in possessison of the hogs. The charge does not state that the possession alone was sufficient to convict, but, on the contrary, in the preceding paragraph it specifically states that the presumption is merely a presumption of fact and is to be considered together with all the other facts and circumstances in the case in determining the defendants' guilt or innocence. The defendants had no burden placed upon them by the assailed portion of the charge as contended by them. In truth, no mention of burden of proof is made therein. *Brogden, J.,* in *S. v. Whitehurst,* 202 N. C., 631, writes: "Consequently physical presence at the scene of larceny is not deemed to be absolutely essential to conviction if it appears that the defendant actually 'advised and procured the crime' or aided and abetted the commission thereof." *Hoke, J.,* in *S. v. Overcash,* 182 N. C., 889, writes, ". . . as to this offense (larceny) our decisions are to the effect that there can be no accessories, but all who 'aid, abet, advise, or procure the crime are principals.' " Exception No. 18 cannot be sustained.

We have carefully read the evidence in this case and are of the opinion that when read in the light most favorable to the State it is sufficient to carry the case to the jury as to both defendants, even if the exception to the refusal to allow the motion to dismiss the case had not been waived by a failure to renew the motion at the conclusion of all the evidence.

In the trial in the Superior Court, we find

No error.