STATE OF NORTH CAROLINA v. JAMES CURTIS VONCANNON

No. 29

(Filed 7 April 1981)

**Larceny § 7.4— larceny of tractor — possession of recently stolen property**

The State's evidence was insufficient to be submitted to the jury on the issue of defendant's guilt of felonious larceny of a tractor under the doctrine of possession of recently stolen property where it tended to show that defendant went to the home of his sister and her husband, asked if another person could park the tractor on their property, and told the sister and her husband that he had no idea who this other man was; permission was given; defendant left the home and the tractor was subsequently parked at the home; neither defendant's sister nor her husband saw defendant drive the tractor or saw the man referred to by defendant; and the tractor parked at the home of defendant's sister on 5 June had been stolen sometime between 3 and 5 June.

APPEAL by the State pursuant to G.S. 7A-30 (2) from decision of the Court of Appeals, 49 N.C. App. 633, 272 S.E. 2d 153 (1980), granting a new trial on defendant's appeal from a larceny conviction before *Mills, J.*, at the 7 January 1980 Session of STANLY Superior Court.

At trial the State's evidence tended to show that a tractor belonging to Kinlaw International, Inc., disappeared from the company's premises sometime between 3 June 1979 and 7 June 1979 when it was discovered on a farm in Davidson County. The discovery was made after Maxwell Kinlaw, president and owner of the company, received two phone calls concerning the tractor on 7 June. One of the calls was anonymous; the other came from Baxter Varner who owns a tract of land in Davidson County. Varner called to ask if one of Kinlaw's tractors was missing because a tractor with

Kinlaw tags was parked on his land. When Kinlaw searched his property and discovered that one of his tractors had disappeared, he and a Stanly County deputy drove to Davidson County and identified the tractor parked on Varner's land as the tractor missing from the company. They discovered that the front dashboard of the tractor had been tampered with, and the tractor had been "straight wired" to get it started. The tractor, though on Varner's land, was parked close to a house which Varner rented to Mr. and Mrs. John W. York, Jr.

The Yorks testified that someone parked the tractor on the property at night on 5 June 1979, after defendant, Mrs. York's brother, asked if another person could park the tractor on the property. They testified that defendant drove up to the house in his truck between 10:30 and 11:00 p.m. that night. He asked them whether another man could park a tractor on the property. He told Mrs. York that he had no idea who this other man was. Neither of the Yorks saw this other man, nor did they see defendant on or near the tractor. Mrs. York did testify that on 7 June a carload of men came and looked at the tractor, but that none of the men was defendant. A sheriff's deputy testified that the tractor was not examined for fingerprints.

Defendant took the stand in his own defense and testified that he was simply helping a motorist in distress. He testified that he met the man on the tractor at a closed Gulf service station on Highway 49 near the York home. Defendant was driving along Highway 49 at about 10:00 p.m. returning from a job in Charlotte to Asheboro when he stopped to get a soda at a machine outside the station. Defendant noticed a man on a tractor. The man on the tractor told defendant that he was trying to get the tractor home after purchasing it at an auction, and he needed gas. He asked defendant if he knew of a gas station that was open that late at night. Defendant told the man he did not know of one because he was not from the area. When the man asked if defendant thought it would be safe to leave the tractor at the gas station overnight, defendant suggested that he might be able to leave it at his sister's place which was nearby. Defendant went on to testify to essentially the same conversation with the Yorks about which they had already testified. Michael Lee Fleming, who at the time of the incident was an employee of defendant, corroborated defendant's story, testifying that he accompanied defendant on the night in question.

The jury returned a verdict of guilty of larceny. Defendant appealed from a judgment imposing a two-to-five year sentence, suspended for five years on condition that defendant pay a fine of $1,000 plus court costs and make restitution to Kinlaw International for damage to the tractor. The Court of Appeals in an opinion by Hill, J., with Arnold, J., concurring, found no error in the trial judge's failure to dismiss the case but awarded a new trial because the trial judge failed to hold an *in camera* inspection of a certain witness's prior recorded statements before denying defendant access to the statements. Judge Hedrick dissented. The State appealed pursuant to G.S. 7A-30 (2).

*Rufus L. Edmisten, Attorney General, by John R. B. Matthis, Special Deputy Attorney General, and Acie L. Ward, Assistant Attorney General, for the State.*

*Joe D. Floyd for defendant.*

BRANCH, Chief Justice.

Defendant first contends that the Court of Appeals erred by affirming the trial judge's denial of defendant's motion to dismiss. The State relied exclusively on the doctrine of recent possession of stolen goods. Defendant, however, argues that the record contains no direct evidence of possession by defendant. He concludes that the doctrine of recent possession cannot be the basis of a conviction of larceny without direct evidence of possession by defendant.

The State admits that the record contains no direct evidence that defendant possessed the tractor. It argues, however, that it introduced sufficient circumstantial evidence of possession to trigger the doctrine of recent possession. Since the Yorks never saw the mysterious man on the tractor, the State contends, the jury could reasonably infer defendant possessed and controlled the tractor despite defendant's version of events.

We recently dealt with a similar issue in *State v. Maines*, 301 N.C. 669, 273 S.E. 2d 289 (1981). In that case, we recited the law of the doctrine of recent possession:

[The] doctrine is simply a rule of law that, upon an indictment for larceny, possession of recently stolen property raises a presumption of the possessor's guilt of the larceny of such property.

* * *

[T]he presumption spawned by possession of recently stolen property arises when, and only when, the State shows beyond a reasonable doubt: (1) the property described in the indictment was stolen; (2) the stolen goods were found in defendant's custody and subject to his control and disposition to the exclusion of others though not necessarily found in defendant's hands or on his person so long as he had the power and intent to control the goods; *State v. Eppley*, 282 N.C. 249, 192 S.E. 2d 441 (1972); *State v. Foster*, 268 N.C. 480, 151 S.E. 2d 62 (1966); *State v. Turner*, 238 N.C. 411, 77 S.E. 2d 782 (1953); *State v. Epps*, 223 N.C. 741, 28 S.E. 2d 219 (1943); and (3) the possession was recently after the larceny, mere possession of stolen property being insufficient to raise a presumption of guilt. *State v. Jackson*, 274 N.C. 594, 164 S.E. 2d 369 (1968).

> The possession sufficient to give rise to such inference does not require that the defendant have the article in his hand, on his person or under his touch. It is sufficient that he be in such physical proximity to it that he has the power to control it to the exclusion of others and that he has the intent to control it. One who has the requisite power to control and intent to control access to and use of a vehicle or a house has also the possession of the known contents thereof.

*State v. Eppley, supra*, 282 N.C. at 254, 192 S.E. 2d at 445 (citations omitted).

*Id.* at 673-75, 273 S.E. 2d at 293-94.

In *Maines* we also reiterated the prohibition against convicting a defendant on the basis of "stacked inferences." The State in *Maines* presented no direct evidence of the defendant's possession of the stolen goods; it relied solely on the inference of possession from the fact that the defendant was driving the car, owned by another, in which the stolen goods were found. We concluded that the conviction was improper because to permit conviction would have been to allow the inference of guilt based on recent possession to be stacked on the inference of possession based on the control of

the car. Quoting *State v. Parker*, 268 N.C. 258, 262, 150 S.E. 2d 428, 431 (1966), we said,

> Inference may not be based on inference. Every inference must stand upon some clear or direct evidence, and not upon some other inference or presumption.

*State v. Maines, supra* at 676, 273 S.E. 2d at 294.

In this case, the facts present the same legal situation in a different context. Nevertheless, here as in *Maines*, evidence of defendant's possession was at most circumstantial based on the fact that he asked his brother-in-law to permit an unnamed person to park the tractor on his brother-in-law's premises. To convict defendant the jury would have to infer that defendant was in possession of the tractor and then infer that he was the person who stole the tractor based on the inferred possession. Thus, the State was permitted to build its case by stacking the inference of guilt based upon the doctrine of recent possession on top of the inference of possession based on circumstantial evidence.

Considering the complete lack of any direct evidence tending either to connect defendant with the crime or to show him in possession of the stolen property, we hold that the possession shown in defendant is insufficient to support a verdict of guilty of the larceny charged in the bill of indictment. Nonsuit was therefore appropriate. The decision of the Court of Appeals upholding the denial of defendant's motion for nonsuit is

Reversed.