STATE OF NORTH CAROLINA v. ELLIS JAMES LUKER, III

No. 8318SC109

(Filed 20 December 1983)

1. **Constitutional Law § 46— withdrawal of defense counsel improper**

    In a criminal prosecution, it was error for the defense counsel to force defendant to elect between having counsel and testifying in his own behalf. While counsel could have advised defendant not to testify, the ultimate decision should have been the defendant's, and defense counsel was wrong to force such an election. G.S. 15A-1242 and G.S. 15A-1243; G.S. 8-54; Sixth Amendment to U.S. Constitution.

2. **Constitutional Law § 46— withdrawal of counsel—improper—harmless error**

    Although defendant was denied his constitutional right to assistance of counsel in presenting his defense when his counsel improperly withdrew after

State v. Luker

the presentation of the State's evidence, defendant was not denied a fair trial, and the constitutional error was harmless beyond a reasonable doubt in that the jury would have reached the same verdict had counsel not withdrawn. The State presented overwhelming evidence of defendant's guilt; defendant had counsel throughout the first two days of trial when the State presented its evidence; during trial, defense counsel rigorously cross-examined the State's witnesses and presented numerous, valid evidentiary objections; before trial, he submitted jury instructions, pursuant to G.S. 15A-1231 on the burden of proof and reasonable doubt, credibility of witnesses, testimony of interested witnesses, testimony of witnesses with immunity or quasi-immunity, accomplice testimony, impeachment of a witness by proof of crime, and effect of the defendant's decision not to testify; except for the effect of defendant's decision not to testify, the judge used all of the requested instructions in his charge to the jury; counsel's representation, prior to his withdrawal, was competent and commendable; and after he withdrew, on the third and last day of trial, he remained as standby counsel to defendant.

3. **Bills of Discovery § 6; Constitutional Law § 30— motion for discovery of witness's statements at trial—in-camera examination**

There was no merit to defendant's contention that the trial court erred by refusing to given him access to the tape recorded statements of a State's witness where upon defendant's motion, at trial, to discover pre-trial statements made by the State's witnesses to law enforcement personnel, the court found that the only existing statements were tape recorded discussions between the district attorney and the witness; the court conducted an in-camera inspection, found nothing favorable and material to the defense and denied defendant's discovery motion; it then ordered the evidence placed in the record for appellate review; and the steps taken by the trial court were entirely consistent with the procedure outlined in *State v. Hardy*, 293 N.C. 105 (1977).

Judge WELLS concurring in the result.

APPEAL by defendant from *Freeman, Judge.* Judgment entered 15 September 1982 in Superior Court, GUILFORD County. Heard in the Court of Appeals 17 October 1983.

Defendant was charged with three counts of second-degree burglary with intent to commit larceny and one count of breaking and entering with intent to commit larceny. Upon the State's motion, the cases were consolidated for trial. The jury returned verdicts finding defendant guilty of all charges and defendant appeals.

The State's evidence tended to show: Some time in mid February 1982, defendant and three companions, Neil Ravis Reeves, Angela Gaines and Freida Chadwick, drove to Greens-

boro and registered for a room at a "Motel 6" where all four stayed.

Some time during the day on 20 February 1982, defendant broke into and entered the dwelling house of Milas Hilton, in Greensboro, and took items of personal property worth about $1,500.

Some time between 7:00 p.m. on 20 February and 8:00 a.m. on 21 February 1982, defendant broke into and entered the dwelling house of Wayne Miller, in Greensboro, and took items of personal property worth about $175.

Some time between 7:00 p.m. and 10:00 p.m. on 24 February 1982, defendant broke into and entered the dwelling house of Emily Ribet, in Greensboro, and took items of personal property worth about $1,150.

Some time between 7:30 p.m. and 11:45 p.m. on 24 February 1982, defendant broke into and entered the dwelling house of Donna Johnson, in Greensboro, and took personal property worth about $300.

At no time did defendant have the owners' consent to enter the above-mentioned dwelling houses.

Evidence for the defendant tended to show: Defendant testified that he was not involved in any of the offenses charged. He testified that Reeves, Gaines and Chadwick brought various items of personal property to the motel room, but that he never knew where such property had come from.

During trial, immediately before the State rested, and after the State's witnesses had testified and been cross-examined by defense counsel, defense counsel made a motion to discover any statements the State's witnesses may have made before trial to law enforcement personnel. The court found that the only statements in the State's possession were some tape recorded discussions between the district attorney and witness Neil Ravis Reeves. The court, furthermore, found that defendant had had a clear and ample opportunity and did, in fact, cross-examine the witness about any statements he had made to police officers.

The court, therefore, concluded that if a motion to recall the witness for further cross-examination were to be made, it would deny such motion. The court found, as a matter of law, that the defendant had had a thorough and ample opportunity to cross-examine the witness, that the motion was untimely, and that the defendant's constitutional right to cross-examine the witness had not been breached.

The court made an in-camera inspection of the tape recordings and found that nothing in the tapes was favorable and material to the defense. It concluded as a matter of law that defendant was not entitled to further discovery and ordered that such tapes be placed in the Record for appellate review.

Also, during trial, after the State had rested, defense counsel called to the court's attention a conflict between defendant and counsel. Defendant wished to testify but counsel believed that testifying would be prejudicial to defendant. Defense counsel stated that he would not put defendant on the witness stand if he continued to represent him and that defendant did want to testify. Defendant stated that he wanted to testify and the disagreement over whether to testify was the only conflict between counsel and himself. When asked why he wanted to testify, defendant stated that he didn't think he had much chance of being found not guilty unless he testified.

The court found as a fact that the defendant had made an oral motion to discharge his attorney. The court next found that defendant's counsel was capable and competent, that defendant and counsel had been able to communicate, and that the disagreement over trial tactics as to whether or not defendant would testify in his own behalf was not a conflict that would render assistance of counsel ineffective. The court denied defendant's motion to discharge his attorney, finding that such discharge would be disruptive to the trial and court procedure and that defendant's reasons were not legally sufficient to require discharge. After such order, defendant and counsel found themselves at an impasse. The court, thereupon, changed its order and granted defendant's motion to discharge his attorney, based on defendant's right of self-representation. The court, however, instructed defendant's attorney to act as standby counsel.

*Attorney General Edmisten, by Thomas B. Wood, Assistant Attorney General, for the State.*

*Ann B. Petersen, Assistant Appellate Defender, and Adam Stein, Appellate Defender, for the defendant appellant.*

VAUGHN, Chief Judge.

[1] It is a cardinal principle of criminal law that an indigent defendant has the right under the Sixth Amendment of the United States Constitution to assistance of counsel for his defense. *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed. 2d 530 (1972); *Gideon v. Wainright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 2d 799 (1963); *State v. Hutchins,* 303 N.C. 321, 279 S.E. 2d 788 (1981); *see also* N.C. Const. Art. I, § 23.

Upon defendant's affidavit of indigency in the case at bar, counsel was appointed on 4 March 1982. Counsel represented defendant for approximately six months until he withdrew in the middle of September during defendant's trial. During trial, after the State had rested, counsel and defendant disagreed over whether defendant should testify. Defendant's attorney stated that he would withdraw if defendant testified. Defendant chose to testify. Defendant now contends that forcing him to choose between being represented by counsel and testifying in his own defense deprived him of his right to counsel and to equal protection and due process of law. In light of defendant's Sixth Amendment right to representation, we think that it was error for defense counsel to withdraw; nevertheless, we hold that such error was harmless beyond a reasonable doubt.

It is the obligation of the attorney, once appointed, to serve as counselor and advocate to his client. *See* Standards For Criminal Justice, the Defense Function, § 4-1.1 (1982 Supp.). The relationship between the client and his attorney is like that of principal and agent, not ward and guardian. *State v. Barley,* 240 N.C. 253, 81 S.E. 2d 772 (1954). "While an attorney has implied authority to make stipulations and decisions in the management or prosecution of an action, such authority is usually limited to matters of procedure[.]" *Id.* at 255, 81 S.E. 2d at 773. In *State v. Barley,* defendant's attorney tendered a plea of *"nolo contendere"* even though defendant protested his innocence and wished to

enter a plea of "not guilty." Our Supreme Court set aside the judgment against defendant entered without a jury and remanded the case for trial on defendant's plea of "not guilty." "[O]rdinarily," the Court explained, "a stipulation operating as a surrender of a substantial right of the client will not be upheld." *Id.* at 255, 81 S.E. 2d at 773.

Like the decision regarding how to plead, the decision whether to testify is a substantial right belonging to the defendant. While strategic decisions regarding witnesses to call, whether and how to conduct cross-examinations, what jurors to accept or strike, and what trial motions to make are ultimately the province of the lawyer, certain other decisions represent more than mere trial tactics and are for the defendant. These decisions include what plea to enter, whether to waive a jury trial and *whether to testify in one's own defense.* ABA Standards For Criminal Justice, the Defense Function, § 4-5.2 (1982 Supp.); *Wainright v. Sykes,* 433 U.S. 72, 91, 97 S.Ct. 2497, 2509, 53 L.Ed. 2d 594, 611 (1977), (Burger, C.J., concurring).

While at common law, criminal defendants were not competent to testify in their own behalf, G.S. 8-54 removes this barrier and provides that every person, including a criminal defendant is a competent witness. Similarly, under 18 U.S.C. § 3481, federal criminal defendants have the right to testify.

The United States Supreme Court has intimated and several recent courts have concluded that the right to testify is not only a statutory right, but is a constitutional right, as well. Although not specifically guaranteed in the Constitution, these courts have held that the right to testify emanates from the due process requirements of the Fifth and Fourteenth Amendments and from the compulsory process clause of the Sixth Amendment. *See, e.g., United States v. Bifield,* 702 F. 2d 342 (2d Cir.), *cert. denied,* --- U.S. ---, 103 S.Ct. 2095, 77 L.Ed. 2d 304 (1983); *Alicea v. Gagnon,* 675 F. 2d 913 (7th Cir. 1982); *United States ex rel. Wilcox v. Johnson,* 555 F. 2d 115 (3d Cir. 1977). In *Brooks v. Tennessee,* 406 U.S. 605, 612, 92 S.Ct. 1891, 1895, 32 L.Ed. 2d 358, 364 (1972), the United States Supreme Court stated: "Whether the defendant is to testify is an important tactical decision as well as a matter of constitutional right." In *Faretta v. California,* 422 U.S. 806, 819, 95 S.Ct. 2525, 2533, 45 L.Ed. 2d 562, 572 (1975), the Court ex-

---

---

plained that the right to self-representation and to make one's own defense personally, though not stated outrightly in the Sixth Amendment, is necessarily implied by its structure. We think that the right to testify in one's own behalf is further implied from the right to self-representation. We draw upon inferences from United States Supreme Court cases and holdings in other jurisdictions when we conclude that defendant's right to testify emanates from the Sixth Amendment and is "essential to due process of law in a fair adversary process." *Id.* (n. 15).

While it is true that a defendant may waive a constitutional right like the right to testify or to be represented, such waiver must be knowledgeable and voluntary. *See Faretta v. California, supra; State v. Hutchins, supra.* Under G.S. 15A-1242, a defendant may proceed at trial without the assistance of counsel if the trial judge makes a thorough inquiry and is satisfied that defendant:

(1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled.

(2) Understands and appreciates the consequences of this decision; and

(3) Comprehends the nature of the charges and proceedings and the range of permissible punishments.

Under G.S. 15A-1243, when a defendant has elected to proceed without counsel, the trial judge may, in his discretion, appoint standby counsel to assist defendant when called upon to bring to the judge's attention matters favorable to the defendant.

In the case at bar, though no formal motion had been made, the court found as fact that defendant had made a motion to discharge his attorney. The following colloquy then occurred:

THE COURT: Mr. Luker, as I understand it, you have arrived at some conflict with your attorney as to whether or not you are going to take the stand. Does that conflict still exist?

MR. LUKER: Yes, sir.

THE COURT: Let me explain to you that you do have the right to the assistance of counsel, including the right to assignment of counsel, and your lawyer has been appointed. Do you un-

derstand that you have the right to be represented by this Court-appointed attorney, don't you?

MR. LUKER: Yes, sir.

THE COURT: Do you understand that if I allow your attorney to withdraw and let you conduct this case yourself as your own lawyer that I cannot assist you; that I would have to hold you to the same standards that I would hold an attorney; that you will have the sole responsibility of conducting your trial yourself, making decisions; do you understand that?

MR. LUKER: Yes, sir.

THE COURT: Do you understand as a result of these cases you're charged with that you could get up to one-hundred and seventy years in prison?

MR. LUKER: Yes, sir.

THE COURT: And that the presumptive sentence alone if given consecutively would be fifty-seven years. Do you understand that?

MR. LUKER: Say that again.

THE COURT: The presumptive sentence on these charges would be fifty-seven years if they are to run at the expiration of each other. Do you understand that?

MR. LUKER: Yes, sir.

THE COURT: You do understand that if I let your lawyer withdraw you have to put on your own witness, your own evidence, then you're going to have to make your own jury argument at the end of the case? Do you understand that?

MR. LUKER: Yes, sir. I'm not saying I'm a lawyer by a long shot. But could the Court help me, instruct me in doing that?

THE COURT: I can't help you. That is what I'm saying. I can't help you at all. You have the right to be your own lawyer. But I can't assist you. You will have to make your own final argument.

I might say what I will do. See, I'm going to ask Mr. Farran to sit behind you and act as what we call a stand-by counsel.

The judge's conduct and ruling would have been entirely proper under G.S. 15A-1242 and 1243 had defendant voluntarily opted to represent himself. Defendant's motion, however, was not voluntary. The following exchange precipitated the judge's finding that defendant had made a motion to discharge his attorney.

THE COURT: This is a disagreement over whether or not you will take the stand or whether you will exercise your right to remain silent?

MR. LUKER: Yes, sir.

THE COURT: And other than that, you have had no conflict with your lawyer?

MR. LUKER: No, sir.

THE COURT: Other than that, you're satisfied with his services?

MR. LUKER: Yes, sir.

THE COURT: You understand that you have the right to represent yourself.

You are not asking to fire your lawyer, are you?

MR. LUKER: Yes, sir. I think that is what we're going to have to do, if we can't come to no other conclusion.

The Record reveals that defendant was forced to elect between having counsel and testifying in his own behalf. Such election was improper. While counsel could have advised defendant not to testify, the ultimate decision should have been the defendant's. Defendant's dilemma has been characterized by other courts as a "Hobson's choice," i.e., a dilemma involving the relinquishment of one constitutional right in order to assert another. *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed. 2d 1247 (1968); *see United States ex rel. Wilcox, supra.* In this case, by choosing to testify, defendant was forced to give up his constitutional right to counsel.

We note that nothing in the Record suggests that counsel's withdrawal was premised on a belief that defendant would perjure himself on the witness stand. An attorney who learns, prior to trial, that his client intends to commit perjury or participate in the perpetration of fraud on the court, has an obligation to withdraw, seeking leave of the court, if necessary. *In re Palmer*, 296 N.C. 638, 252 S.E. 2d 784 (1979). Whether an attorney can or should withdraw once trial has begun and his client insists on testifying falsely is a hotly debated issue, not now before this Court.

[2] Although defendant was denied his constitutional right to assistance of counsel in presenting his defense, we do not conclude that defendant was denied a fair trial. Since we have determined that there was a constitutional error, our next step is to determine whether such error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed. 2d 705, *reh. denied*, 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed. 2d 241 (1967); *see also United States v. Morrison*, 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed. 2d 564, *reh. denied*, 450 U.S. 960, 101 S.Ct. 1420, 67 L.Ed. 2d 385 (1981); *Moore v. Illinois*, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed. 2d 424 (1977). In *Chapman v. California*, the United States Supreme Court formulated a rule whereby a constitutional error is harmless if honest, fair-minded jurors would have reached the same verdict had there been no such error. A harmless error rule, the Court explained, serves an important function insofar as it blocks setting aside convictions for small errors or defects which would not have changed the result at trial. 386 U.S. at 22, 87 S.Ct. at 827, 17 L.Ed. 2d at 709. In both *Moore v. Illinois* and *United States v. Morrison*, the circuit courts had reversed judgments entered against the defendant, finding that defendants' Sixth Amendment rights to counsel had been violated. In both cases, the Supreme Court reversed and remanded so that a determination could be made as to whether such constitutional error was harmless. In the instant case, the violation of defendant's constitutional right to counsel was harmless. We believe the jury would have reached the same verdict had counsel not withdrawn.

The State presented overwhelming evidence of defendant's guilt. All three accomplices gave similar testimonies as to defendant's involvement in the crimes charged. Ms. Gaines and Ms. Chadwick testified that Reeves and defendant left their motel

room on the evenings of the burglaries and returned with a sundry of goods. Reeves testified that he and defendant broke into the victims' homes and stole various items of property. A Greensboro detective testified that Reeves identified the homes he and defendant broke into and that these homes were the homes of the three victims. Ms. Gaines' attorney testified that from the start, before any plea bargaining, Ms. Gaines had told him of defendant's involvement. A Winston-Salem fraud investigator testified that when Ms. Chadwick was apprehended for using a stolen credit card, she told him that defendant had given her the card. Furthermore, when defendant later testified, he opened the door, admitting evidence of his prior criminal history, including his recent escape from an Alabama penitentiary, where he had been imprisoned on several counts of burglary, even though its only relevance may have been to show his character or disposition to commit the crimes charged. *See State v. Allen,* 50 N.C. App. 173, 272 S.E. 2d 785 (1980), *appeal dismissed,* 302 N.C. 399, 279 S.E. 2d 353 (1981).

For the defense, defendant testified that he did not commit any of the burglaries charged. Defendant called one other witness who testified, in pertinent part, that while in jail, he overheard Ms. Gaines tell defendant: "Well, you know what I have to do, so that I won't get a lot of time."

Defendant had counsel throughout the first two days of trial when the State presented its evidence. During trial, defense counsel rigorously cross-examined the State's witnesses and presented numerous, valid evidentiary objections. Before trial, he submitted jury instructions, pursuant to G.S. 15A-1231 on burden of proof and reasonable doubt, credibility of witnesses, testimony of interested witnesses, testimony of witnesses with immunity or quasi-immunity, accomplice testimony, impeachment of a witness by proof of crime, and effect of the defendant's decision not to testify. Obviously, except for the effect of defendant's decision not to testify, the judge used all of the requested instructions in his charge to the jury. Counsel's representation, prior to his withdrawal, was competent and commendable. After he withdrew, on the third and last day of trial, he remained as standby counsel to defendant.

In *Chapman v. California*, the prosecutor commented extensively on the defendant's failure to testify and the judge told the jury that it could draw adverse inferences from defendant's silence. The Court found that such error was not harmless and explained:

> In fashioning a harmless constitutional error rule, we must recognize that harmless-error rules can work very unfair and mischievous results when, for example, highly important and persuasive evidence, or argument, though legally forbidden, finds its way into a trial in which the question of guilt or innocence is a close one.

386 U.S. at 22, 87 S.Ct. at 827, 17 L.Ed. 2d at 710. In the case at bar, the question of defendant's guilt or innocence was not close. Application of the harmless error rule, therefore, brings about the most fair result.

We are further persuaded by the reasoning in *United States v. Morrison, supra*, in which the Court said:

> The Sixth Amendment provides that the accused have the right 'to have the Assistance of Counsel for his defense.' This right, fundamental to our system of justice, is meant to assure fairness in the adversary criminal process . . . .

> At the same time and without detracting from the fundamental importance of the right to counsel in criminal cases, we have implicitly recognized the necessity for preserving society's interest in the administration of criminal justice. Cases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.

449 U.S. at 364, 101 S.Ct. at 667-68, 66 L.Ed. 2d at 567-68.

[3] In his last assignment of error, defendant contends that the trial court erred by refusing to give him access to the tape recorded statements of State's witness, Ravis Reeves. We find no merit in defendant's contention. The procedure followed by the trial court was entirely proper under North Carolina law. Unlike under federal law, in North Carolina, a defendant is not automatically entitled to discover prior statements of a material State's

witness. *State v. Hardy*, 293 N.C. 105, 235 S.E. 2d 828 (1977). Pursuant to *State v. Hardy*, when defendant makes a request at trial, for disclosure of evidence in the State's possession that is relevant, competent and not privileged, the trial court is required, at a minimum, to order an in-camera inspection of the evidence and make appropriate findings of fact. If the court, then, rules against defendant on his motion, it should order the sealed evidence placed in the Record for appellate review.

Reeves' tape recorded statements, in the instant case, were relevant and competent, and when Reeves took the stand, they lost their privileged work product status with respect to matters covered in his testimony. *State v. Hardy, supra.* Upon defendant's motion, at trial, to discover any pre-trial statements made by State's witnesses to law enforcement personnel, the court found that the only existing statements were tape recorded discussions between the district attorney and Reeves. The court conducted an in-camera inspection, found nothing favorable and material to the defense and denied defendant's discovery motion. It then ordered the evidence placed in the Record for appellate review. The steps taken by the trial court were entirely consistent with the procedure outlined in *State v. Hardy, supra. See also State v. Voncannon*, 49 N.C. App. 637, 272 S.E. 2d 153 (1980), *reversed on other grounds*, 302 N.C. 619, 276 S.E. 2d 370 (1981).

The majority's review of the tapes in question fails to disclose anything material and favorable to the defense. Defendant was accorded substantive and procedural due process.

No error.

Judge JOHNSON concurs.

Judge WELLS concurs in the result.

Judge WELLS concurring in the result.

I do not believe that the decision of our Supreme Court in *State v. Hardy*, 293 N.C. 105, 235 S.E. 2d 828 (1977), requires the trial court to conduct an *in camera* review of tape recorded statements which have not been reduced to a written transcript. For this reason, I have not reviewed the tape recording filed by

defendant in this case. I am convinced that such a requirement, if adopted and followed, would result in an enormous waste of judicial time.