STATE OF NORTH CAROLINA v. ROLAND DAVIS

No. 9026SC250

(Filed 18 December 1990)

1. **Rape and Allied Offenses § 4.1 (NCI3d)— rape and first degree sexual offense—defendant's prior offenses—admissible**

   The trial court properly admitted evidence of defendant's prior sex offenses in a prosecution for first degree rape and first degree sexual offense to show plan, scheme, system, or design where the prior offenses were sufficiently similar to the crimes charged and were not too remote in time. Although over ten and one-half years elapsed between the offenses, the period of time exclusive of prison time was only 132 days. N.C.G.S. § 8C-1, Rule 404(b), N.C.G.S. § 8C-1, Rule 403.

   **Am Jur 2d, Rape § 71.**

   **Admissibility, in rape case, of evidence that accused raped or attempted to rape person other than prosecutrix. 2 ALR4th 330.**

2. **Appeal and Error § 504 (NCI4th); Attorneys at Law § 31 (NCI4th)— rape and first degree sexual offense—defense witness called over defense counsel's objections—invited error—no prejudice**

   There was no prejudicial error in a prosecution for rape and first degree sexual offense where defendant was allowed

to call a witness over his counsel's objections and the court failed to inform defendant of the gravity of his decision. Strategic trial decisions in North Carolina are ultimately decisions for the attorney; assuming without deciding that the trial court erred, there was no prejudice because a defendant is not prejudiced by the granting of relief which he has sought or by error resulting from his own conduct. N.C.G.S. § 15A-1443(c).

**Am Jur 2d, Appeal and Error § 717.**

3. **Rape and Allied Offenses § 5 (NCI3d) — first degree rape and first degree sexual offense — serious injury — evidence sufficient**

The trial court did not err by accepting guilty verdicts in a first degree rape and first degree sexual offense prosecution where the court submitted to the jury as possible bases for the first degree convictions use of a deadly weapon and serious physical or mental injury to the victim and the verdict does not reflect the theory upon which defendant's convictions were based. Although defendant contended that there was insufficient evidence to support a conviction based upon serious injury, the victim testified to multiple sufferings indicative of residual injury to her mind and body.

**Am Jur 2d, Rape §§ 63, 90.**

**Sufficiency of allegations or evidence of serious bodily injury to support charge of aggravated degree of rape, sodomy, or other sexual abuse. 25 ALR4th 1213.**

4. **Rape and Allied Offenses § 7 (NCI3d) — first degree rape and first degree sexual offense — mandatory life sentence not cruel and unusual**

Mandatory life sentences for first degree rape and first degree sexual offense do not constitute cruel and unusual punishment.

**Am Jur 2d, Rape § 115.**

**Comment note: Length of sentence as violation of constitutional provisions prohibiting cruel and unusual punishment. 33 ALR3d 335.**

STATE v. DAVIS

[101 N.C. App. 12 (1990)]

APPEAL by defendant from judgments signed 11 August 1989 by *Judge Marvin K. Gray* in MECKLENBURG County Superior Court. Heard in the Court of Appeals 24 October 1990.

*Lacy H. Thornburg, Attorney General, by Harold M. White, Jr., Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Mark D. Montgomery, Assistant Appellate Defender, for defendant-appellant.*

GREENE, Judge.

The defendant appeals from judgments signed 11 August 1989, which judgments were based upon a jury verdict convicting the defendant of one violation of N.C.G.S. § 14-27.2 (1986), first degree rape, and one violation of N.C.G.S. § 14-27.4 (1986), first degree sexual offense. The defendant was sentenced to two consecutive life sentences.

The State's evidence at trial tended to show the following: In mid-December, 1988, the victim visited some friends at their home in Charlotte, North Carolina. She stayed with them for three or four days. On one of these days, she met the defendant. On the evening of 17 December 1988, the defendant visited the victim and her friends on three separate occasions. First, he stopped by their home after he had finished working for the day. He returned a few hours later with his girlfriend. They sat around the house talking and drinking beer and wine for about an hour. The victim did not drink anything during this visit. Later, around 11:00 p.m., the defendant returned alone. He asked the victim if she would care to smoke some marijuana with him. She refused to do so in her friends' home, but she accepted the defendant's invitation to join him, his girlfriend, and his other friends at his house to smoke some marijuana.

When the defendant and the victim arrived at the defendant's house, he introduced the victim to his mother and sister. They then went down into the defendant's basement apartment where his friends were drinking beer and smoking pot and cocaine. The victim sat down on the couch and waited for the defendant and one of his friends to find some marijuana for her to smoke. They returned and the victim smoked some marijuana with them.

Later, the defendant's friends began to leave. After some time, only the defendant, his girlfriend, and the victim remained. The

defendant's girlfriend decided to go to the store for more beer. When she returned, she had an argument with the defendant outside his apartment. After a few minutes, his girlfriend came back into the apartment, got her coat, and left. The victim also decided to leave, so she followed the defendant's girlfriend out the door. The defendant went after the victim to stop her from leaving. He caught her after she had walked across the defendant's yard for some distance. The defendant told the victim that she owed him money and that "you either give me my money back or you can give me my money's worth." The victim reminded the defendant that she had previously told him that she had no money, but that if he really wanted money, she could get some at her friends' home. The victim tried to leave, but the defendant grabbed her again. He choked her until she blacked out, thus falling to the ground. She blacked out only for a few seconds. The defendant picked the victim up off of the ground and carried her back to his apartment.

Once inside his basement apartment, he placed the victim on the couch. She began to scream, but stopped when the defendant pulled out a gun. He then told her to be quiet and he would not hurt her. He locked the door. The victim begged the defendant to allow her to leave, but the defendant refused. One of the defendant's friends, Ricky Parker, returned to the apartment and knocked on the door. When the defendant answered the door, the victim asked Mr. Parker for help. He refused. After Mr. Parker left, the defendant pointed the gun at the victim, told her to be quiet, and demanded that she remove her clothing. The victim complied with the defendant's demands. The defendant then raped and sodomized the victim, first by vaginal intercourse, then by anal intercourse, and once again by vaginal intercourse. Afterwards, Mr. Parker returned to the apartment. The defendant told him that he was going to walk the victim back to her friends' home. The victim asked Mr. Parker to join them, and he agreed to go along. The three of them left the apartment, stopped at a liquor store to see if the defendant could find his girlfriend, and then proceeded to the victim's friends' home. While in route, the defendant said to Mr. Parker, "Man, I believe I done [sic] fucked up this time."

The State introduced into evidence, over strenuous objection, the testimony of three witnesses concerning two incidents of forcible sexual assault by the defendant against two females at the

defendant's basement apartment on 27 May 1978. The testimony showed that the defendant, at age 14, was standing outside his apartment at approximately 8:00 p.m. when Patricia Harris, a fifteen-year-old girl and acquaintance of the defendant, walked past him on her way home from a friend's house. The defendant tried to talk to Ms. Harris, and when she refused to talk with him, he grabbed her by the arm and pulled her towards the basement. Ms. Harris struggled with the defendant, but he continued to pull and drag her towards the basement. When they arrived at the basement, the defendant's aunt called out to him. He loosened his grip, and Ms. Harris escaped. Later in the evening, the defendant, while playing in the street, began talking to an eleven-year-old girl, also an acquaintance of the defendant. The defendant grabbed her hand and told her to talk with him or he would hit her. He then made her walk with him down a bike trail, twisting her arm all the while. He then forced her to go with him to the basement. Upon their arrival, the defendant told her to take her clothes off. Once she did, the defendant raped her. As he raped her, two other males entered the basement. They held her down, and the defendant continued to rape her. Before the defendant had finished, a police officer arrived at the apartment and rescued the young girl from the assault. The officer took the defendant to a juvenile detention facility where he admitted his deeds to an investigator with the Charlotte Police Department. Though the defendant was never convicted of raping the eleven-year-old girl, he was imprisoned from 19 June 1978 until 7 August 1988 for conduct associated with these assaults. Ms. Harris, the police officer, and the investigator testified to the above at trial. The State successfully argued that this testimony was admissible under Rule 404(b) of the Rules of Evidence. The State argued at trial that the defendant's conduct in 1978 combined with his conduct in question showed the defendant's intent, plan, and scheme to force female acquaintances into his basement and rape them.

At trial, over the defense counsel's objections, the trial court allowed the defendant to call a witness, Ricky Parker, to testify on his behalf. The trial court did not reach its decision lightly. To allow the defendant the opportunity to make an informed decision, the trial court held a *voir dire* hearing of Mr. Parker out of the jury's presence during which the defendant's counsel examined Mr. Parker. Before the hearing, the defendant had been informed of his right to the last argument should he not put on any

STATE v. DAVIS

[101 N.C. App. 12 (1990)]

evidence. After the hearing, the trial court informed the defendant of the other consequences of calling Mr. Parker to testify before the jury, including the possibility that the jury would not believe his witness, his witness would be subject to cross-examination, and that on cross-examination the State could inquire as to his witness's criminal convictions, if he had any. The trial court asked the defendant if his decision to call Mr. Parker had been made of his own free will, without coercion, and voluntarily to which question the defendant responded, "Yes, sir." The trial court suggested that the defendant follow his counsel's advice and not call Mr. Parker, but the defendant refused saying,

> Like all the times I been to trial, like all the time, you know, since I been grown and tried. I done took all the advice, you know, she been telling me a lot of things and she say no and I say yes but, you know, I always agree with her. She ain't never agreed with me, she should go with me, you know, at least one time.

The trial court, having concluded its inquiry, allowed the defendant to call Mr. Parker and instructed the defendant's counsel to examine Mr. Parker, which she did. The defendant offered no further evidence.

---

The issues are: (I) whether the trial court properly admitted evidence concerning the defendant's prior sex offenses for the purpose of showing the defendant's plan, scheme, system, or design; (II) whether the trial court committed prejudicial error by allowing the defendant to call a witness on his behalf over defense counsel's objection; (III) whether the State presented sufficient evidence of the victim's serious personal injury to sustain a conviction of first degree rape and sexual offense on that basis; and (IV) whether mandatory life sentences for first degree rape and first degree sexual offense convictions constitute cruel and unusual punishment.

I

[1]   Though N.C.G.S. § 8C-1, Rule 404(b) has long been considered to be a "general rule of exclusion" subject to many exceptions, recent appellate cases have unequivocally stated that Rule 404(b) is a "general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant." *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990) (emphasis in original); *State v. Faircloth*, 99 N.C. App. 685, 689, 394 S.E.2d 198, 200-01 (1990).

Under Rule 404(b), " 'evidence of other offenses is *admissible* so long as it is *relevant to any fact or issue other than* the character of the accused.' " *Coffey,* 326 N.C. at 278, 389 S.E.2d at 54 (emphases in original) (citations omitted). Thus, such relevant evidence is admissible unless "its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *Id.* at 279, 389 S.E.2d at 54 (emphasis in original).

North Carolina courts liberally admit evidence of similar sex offenses. *Id.* at 279, 389 S.E.2d at 54-55. As our Court has explained,

> evidence of prior sex acts may have some relevance to the question of a defendant's guilt of the crime charged if it tends to show a relevant state of mind such as intent, motive, plan, or opportunity . . . . Such evidence is not offensive to the general prohibition against character evidence because it is admitted not to prove defendant acted in conformity with conduct on another occasion but rather as circumstantial proof of defendant's state of mind.

*State v. Jones,* 322 N.C. 585, 588, 369 S.E.2d 822, 823 (1988) (citations omitted). Here, the trial court concluded that evidence of the defendant's prior sex offenses was admissible for deciding only two issues: First, whether the defendant had the intent to commit the crimes charged, which according to the trial court was a necessary element of the crimes charged; and second, whether there existed in the defendant's mind a plan, scheme, system, or design to commit the crimes charged. We do not address the issue of whether the evidence was admissible to show the defendant's intent because we conclude that the evidence was admissible for the proper purpose of showing plan, scheme, system, or design. *See State v. Boone,* 307 N.C. 198, 209, 297 S.E.2d 585, 592 (1982) (intent not essential element of first degree rape or sex offense); *cf. State v. Hall,* 85 N.C. App. 447, 355 S.E.2d 250, *disc. rev. denied,* 320 N.C. 515, 358 S.E.2d 525 (1987) (where defendant was tried for first degree attempted rape, defendant's prior conviction for assault with intent to rape admissible to show intent in present case).

When evidence of the defendant's prior sex offenses is offered for the proper purpose of showing plan, scheme, system, or design, "the ultimate test for determining whether such evidence is admissible [under Rule 404(b)] is whether the incidents are sufficiently similar and not so remote in time as to be more probative than

## STATE v. DAVIS

[101 N.C. App. 12 (1990)]

prejudicial under the balancing test of N.C.G.S. § 8C-1, Rule 403."
*State v. Boyd*, 321 N.C. 574, 577, 364 S.E.2d 118, 119 (1988); *State
v. Pruitt*, 94 N.C. App. 261, 266, 380 S.E.2d 383, 385, *disc. rev.
denied*, 325 N.C. 435, 384 S.E.2d 545 (1989). Thus, the "ultimate
test" for admissibility has two parts: First, whether the incidents
are sufficiently similar; and second, whether the incidents are too
remote in time. *Jones*, 322 N.C. at 590, 369 S.E.2d at 825 (remoteness
of time goes to admissibility, not merely to weight and credibility).
Though the defendant argues to the contrary, we first conclude
that the defendant's prior sex offenses are sufficiently similar to
the crimes charged to be admitted for the purpose of showing
the defendant's plan, scheme, system, or design of forcing uncon-
senting female acquaintances into his basement for the purpose
of gratifying his sexual desires. *See Boyd*, 321 N.C. at 578, 364
S.E.2d at 120 (evidence of defendant's prior sexual offenses commit-
ted upon a young female relative admissible as showing a scheme,
where in both cases the defendant sexually assaulted "young female
relatives left in his custody while his wife was working"); *State
v. Everett*, 98 N.C. App. 23, 29, 390 S.E.2d 160, 163, *disc. rev.
denied*, 326 N.C. 599, 393 S.E.2d 884 (1990) (testimony by defend-
ant's daughter concerning defendant's prior sex offenses upon her
admissible to show plan or scheme to sexually abuse his daughter
and stepdaughter while wife at work, where evidence showed de-
fendant raped each after putting them to bed, covering their faces
with a cloth, and wiping each clean after intercourse); *State v.
Roberson*, 93 N.C. App. 83, 376 S.E.2d 486 (1989) (testimony by
two witnesses that defendant had touched them in the same manner
as the defendant was alleged to have touched the victim under
consideration held admissible to show plan or scheme).

In both 1978 and 1988, the defendant would first attempt to
talk to his intended victim, a female with whom the defendant
was acquainted. After refusing the defendant's advances, the victim
would attempt to leave, and the defendant would not allow it.
In 1978, the defendant grabbed and twisted his victim's arm, pulling
his victim forcefully towards his basement. In the present case,
the defendant used physical force to get his victim down into his
basement after she had tried to leave his presence. In 1978, Ms.
Harris was able to escape the defendant's grasp as they arrived
at the basement. The eleven-year-old girl in 1978 and the victim
in this case were not able to escape. Once they arrived in the
basement, the defendant told them to disrobe. In 1978, the defend-

ant's two friends assisted him in raping his victim. In 1988, the defendant used a gun thereby committing the acts by himself. Thus, in both cases, the defendant used some means of force beyond his own strength to accomplish the sex crimes. In 1978 and 1988, the defendant vaginally raped his victim. The only difference between the 1978 and 1988 offenses is that in 1978 the defendant only had vaginal intercourse with his victim, whereas in 1988 he had both vaginal and anal intercourse. This difference, when compared to the numerous similarities, does not justify exclusion of the evidence under the above test. *See State v. Moore*, 309 N.C. 102, 305 S.E.2d 542 (1983) (where defendant's identity was in issue, evidence that defendant committed sex crime against another person subsequent to crime for which he was being tried erroneously admitted because differences in the crimes outweighed similarities).

Not only are the offenses sufficiently similar, but they are not too remote in time and are thus admissible under Rules 403 and 404(b). Over ten and one-half years elapsed between the defendant's prior sex offenses and the ones for which he has been tried. However, the defendant spent the majority of that time in prison on charges connected with the 1978 sex offenses. Thus, the period of time between the offenses, exclusive of the prison time, was only 132 days. *Hall*, 85 N.C. App. at 451, 355 S.E.2d at 253 (where defendant was indicted for first degree attempted rape, defendant's nine-year-old conviction for assault with intent to rape admissible to prove intent, the conviction being not too remote under Rules 403 and 404(b) because "defendant had been released from prison for that offense only two days before the charged offense occurred, a fact which enhances its probative value"); *see also State v. Scott*, 318 N.C. 237, 244, 347 S.E.2d 414, 418 (1986) (where evidence of defendant's prior sex offense with sister occurring nine years before trial held to be too remote in time to be probative, Court noted that incarceration may effectively explain remoteness in time); *cf. State v. Riddick*, 316 N.C. 127, 134, 340 S.E.2d 422, 427 (1986) (remoteness in time more significant when evidence of prior sex offense offered to show plan or scheme as opposed to *modus operandi*, as it is "unlikely, though not inconceivable, that crimes committed several years apart were planned at the same time"). Because only 132 days, exclusive of prison time, separates the prior offenses from the present ones, we conclude that "the passage of time between the commission of the" offenses has not eroded the commonality between them, such that proof of the earlier offenses may

STATE v. DAVIS

[101 N.C. App. 12 (1990)]

reasonably be regarded as proving the later ones. *Jones*, 322 N.C. at 588-90, 369 S.E.2d at 824 (plan or scheme purpose under Rule 404(b) "rests on the proposition that there may be some logical connection between two acts from which it can be said that proof of the one tends to establish the other"); *State v. Summers*, 92 N.C. App. 453, 460, 374 S.E.2d 631, 635 (1988), *disc. rev. denied*, 324 N.C. 341, 378 S.E.2d 806 (1989) (evidence of prior incidents occurring "within twelve months prior to the incident for which defendant was charged" held admissible to show plan or scheme as the earlier incidents were not too remote in time). Therefore, because the defendant's prior sex offenses are sufficiently similar to those in this case, and because they are not too remote in time, we conclude that the trial court did not abuse its discretion in admitting the evidence under Rules 403 and 404(b).

The defendant argues that if the rules of evidence are construed to allow into evidence testimony concerning the defendant's prior sex offenses, then the defendant's constitutional rights to a fundamentally fair trial will have been denied. This argument recently has been rejected by our Supreme Court. *State v. Shamsid-Deen*, 324 N.C. 437, 447-48, 379 S.E.2d 842, 849 (1989) (argument essentially restatement of rationale for "general rule excluding evidence of defendant's prior acts of misconduct").

## II

[2] The defendant next argues that by allowing the defendant to call a witness over defense counsel's objections, and then by failing to inform the defendant of the gravity of his decision, the trial court committed prejudicial error requiring a new trial.

In North Carolina, strategic trial "decisions regarding witnesses to call, whether and how to conduct cross-examinations, what jurors to accept or strike, and what trial motions to make are ultimately" decisions for the attorney. *State v. Luker*, 65 N.C. App. 644, 649, 310 S.E.2d 63, 66 (1983), *rev'd on other grounds*, 311 N.C. 301, 316 S.E.2d 309 (1984). *See also* ABA Standards for Criminal Justice, The Defense Function, § 4-5.2 (1986 Supp.); *Wainright v. Sykes*, 433 U.S. 72, 91, 53 L.Ed.2d 594, 611 (1977) (Burger, C.J., concurring). However, the trial court, over defense counsel's continued objections and after extensive questioning of the defendant, allowed the defendant to disregard his attorney's advice and call a witness. The defendant did not discharge his attorney because of their disagreement, N.C.G.S. § 15A-1242 (1988) (providing mandatory re-

quirements to be followed before defendant will be permitted to represent himself or herself at trial), and the defendant did not conduct the examination of his witness, rather, his counsel did. Assuming that the trial court erred in allowing the defendant to call a witness against the advice of his counsel, an issue we do not decide, the defendant could not have been prejudiced by any such error because "[a] defendant is not prejudiced by the granting of relief which he has sought or by error resulting from his own conduct." N.C.G.S. § 15A-1443(c) (1988); *State v. Rivers*, 324 N.C. 573, 380 S.E.2d 359 (1989) (defendant could not complain of allegedly inadmissible testimony elicited by defense counsel on cross-examination of witness); *State v. Greene*, 324 N.C. 1, 12, 376 S.E.2d 430, 438 (1989), *vacated on other grounds*, --- U.S. ---, 108 L.Ed.2d 603 (1990) (where statement was elicited by defense counsel on cross-examination and admitted without objection, "[a]ny error thus was invited and defendant cannot complain of such error on appeal").

### III

[3]  The defendant argues that the trial court erred in accepting the jury's verdict because of the likelihood that the defendant was convicted of first degree rape and sexual offense on the grounds that the victim suffered serious injury, which in fact she did not. Rape and sexual offense are committed in the first degree when the defendant engages in vaginal intercourse and a sexual act "[w]ith a victim who is a child under the age of 13 years . . ." or "[w]ith another person by force and against the will of the other person, and" either "[e]mploys or displays a dangerous or deadly weapon . . ." or "[i]nflicts serious personal injury upon the victim . . ." or "[t]he person commits the offense aided and abetted by one or more other persons." N.C.G.S. §§ 14.27.2 and 14.27.4. Here, the trial court submitted to the jury two possible bases for first degree convictions, i.e., use of a deadly weapon and "serious physical or mental injury" to the victim. The defendant argues that because the verdict sheet does not reflect the theory on which the defendant's convictions are based, and because there was insufficient evidence to support convictions of the crimes on the basis of the victim having suffered serious injury, a new trial is required. Because the defendant does not argue lack of unanimity in the jury verdict we do not address that issue. *See State v. Hartness*, 326 N.C. 561, 391 S.E.2d 177 (1990) (disjunctively phrased jury instruction on indecent liberties did not deprive defendant of unanimous verdict). We only address the issue of whether there is sufficient

evidence of serious personal injury to support convictions of first degree rape and sexual offense.

"[P]roof of the element of infliction of 'serious personal injury' as required by G.S. 14-27.2(2)b. and G.S. 14-27.4(2)b. may be met by the showing of mental injury as well as bodily injury." *Boone*, 307 N.C. at 204, 297 S.E.2d at 589. Though there is no " 'bright line' rule as to when the acts of an accused cause mental upset which could support a finding of 'serious personal injury,' " it is clear that

> to support a jury finding of serious personal injury because of injury to the mind or nervous system, the State must ordinarily offer proof that such injury was not only caused by the defendant but that the injury extended for some appreciable time beyond the incidents surrounding the crime itself. Obviously, the question of whether there was such mental injury as to result in 'serious personal injury' must be decided upon the facts of each case.

*Id.* at 205, 297 S.E.2d at 589-90 (evidence of victim's shaking, crying, and hysteria immediately after crime and on morning of crime not indicative of residual injury to mind or nervous system therefore not evidence of serious personal injury).

Sufficient evidence exists to support the jury's verdict on the basis that the victim suffered serious personal injury in the form of both bodily and mental injury. The victim testified that in addition to the physical pain she experienced during and immediately after the rape and sodomy, she has continued to experience appetite loss, severe headaches, nightmares, sleep difficulty, difficulty in urination, and difficulty in bowel movements. These sufferings lasted from the evening of the rape and sodomy until the time of the trial. Because the victim's sufferings are indicative of residual injury to her mind and body, we conclude that the evidence could support the jury's verdict that the victim suffered serious personal injury resulting from the rape and sodomy.

IV

[4] The defendant finally argues that the mandatory life sentences imposed for his first degree rape conviction and for his first degree sexual offense conviction constitute cruel and unusual punishment as a matter of law and as applied to him. Our Supreme Court has rejected such an argument on many occasions. *State v. Spaugh*,

KENNEDY v. DUKE UNIV. MED. CENTER

[101 N.C. App. 24 (1990)]

321 N.C. 550, 556, 364 S.E.2d 368, 373 (1988) ("imposition of sentences of life imprisonment for such offenses [first degree rape and first degree sexual offense] does not violate the prohibition against cruel and unusual punishments"); *State v. Holley*, 326 N.C. 259, 388 S.E.2d 110 (1990) (first degree sexual offense); *State v. Peek*, 313 N.C. 266, 275-76, 328 S.E.2d 249, 255-56 (1985) (discussing proportionality of consecutive life sentences in first degree rape cases).

No error.

Judges ORR and DUNCAN concur.

Judge DUNCAN concurred in this opinion prior to 30 November 1990.